**Richard R. ROTHMAN, Plaintiff–Appellant,**

v.

**EMORY UNIVERSITY and Richard W. Riley, Secretary of the Department of Education, Defendants–Appellees.**

No. 96–2901.

United States Court of Appeals, Seventh Circuit.

Argued March 31, 1997.

Decided July 23, 1997.

Richard B. Rothman (argued), Chicago, IL, for Plaintiff–Appellant.

Robert A. Kezelis (argued), Algimantas P. Kezelis, Shawna Lemberg, French, Kezelis & Kominiarek, Chicago, IL, for Defendant–Appellee Emory University.

Jonathan C. Haile, Jack Donatelli (argued), Office of the United States Attorney, Civil Division, Chicago, IL, Judith Winston, Department of Education, Office of the General Counsel, Washington, DC, for Defendant–Appellee Richard W. Riley, Secretary of the Department of Education.

Before BAUER, FLAUM and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Richard Rothman graduated from Emory University School of Law in 1992, and he now practices law in Illinois. Mr. Rothman also suffers from epilepsy. He alleges that Emory discriminated against him throughout law school solely based on his epileptic condition, and he therefore brought this action under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 794(a). Emory filed a counterclaim for breach of contract, seeking to force Rothman to repay the student loans he refused to pay once this litigation commenced. Rothman also sued the Secretary of the Department of Education ("DOE"), alleging that the DOE improperly failed to investigate his administrative complaint regarding Emory's discrimination. Rothman raises a number of arguments on appeal seeking to reverse the district court's grant of summary judgment for Emory on the discrimination and breach of contract claims, as well as the court's dismissal of his claim against the DOE. Rothman also challenges the district court's imposition of sanctions against him for violating a discovery order. None of Rothman's arguments contain any merit, and therefore we affirm the district court's determinations.

## I. HISTORY

Richard Rothman has had a seizure disorder for almost 25 years, and he has been treated for epilepsy for nearly 20 years. Rothman entered Emory University School of Law in the fall of 1989, and he graduated in May 1992. He subsequently passed the Illinois Bar Exam and was admitted to practice in Illinois in November 1992.

This action revolves around Rothman's allegations that Emory discriminated against him throughout his law school career solely because of his epilepsy. Although only certain instances of the alleged discriminatory events are actionable under the ADA and Rehabilitation Act due to various time limitations, we briefly recount some of Rothman's claims that span beyond the limitations period in order to provide a more general account of Rothman's contentions.

The lion's share of Rothman's allegations can be classified as a general assertion that Emory's discriminatory conduct created a hostile environment for him due to his epilepsy. Many of Rothman's complaints involve his numerous meetings with Susan Sockwell, the dean of students at the law school. Dean Sockwell met with Rothman over 75 times during Rothman's tenure at Emory, with Rothman requesting about half of those meetings.

Many of the meetings involved discussions of Rothman's classroom and exam-taking difficulties. During his first semester at Emory, Rothman failed one class and earned mediocre grades in his other classes. At one point, Dean Sockwell suggested that Rothman take a leave of absence. Before his second semester exams, however, Rothman informed Dean Sockwell of his epilepsy, provided the school with a physician's letter reporting his condition, and requested additional time to take his exams. The physician's letter, which was dated December 21, 1987, explained that Rothman had intractable epilepsy, that he at times had weekly seizures lasting from 15 to 90 seconds, that those seizures could cause momentary disori-

entation followed by drowsiness, and that his medications had a detrimental effect on his higher cortical function and thus could potentially limit his academic performance. Dean Sockwell reported Rothman's epilepsy to his professors, and all but one of them accommodated his request by granting him an additional hour of exam time. One professor initially refused to accommodate Rothman because Rothman had been habitually unprepared for his class, but that professor eventually gave Rothman an extra half-hour to take his exam. At the end of his first year, Rothman again met with Dean Sockwell who informed him that he finished the year in good academic standing, suggested that they further discuss his approach to law school, and asked him to submit an updated physician's letter regarding the effects of his medication and his need for future testing accommodations. Rothman sought no accommodations in his second year and his grades improved significantly.

In addition to the discussions about Rothman's exam problems, Rothman and Dean Sockwell also discussed Rothman's hostility towards others at the law school. In one such exchange, Dean Sockwell expressed her concern over Rothman's threat of filing an honor code charge against one of his classmates involving an apparent personal dispute. In this regard, Dean Sockwell suggested that Rothman seek psychological counseling so he could better deal with his problems, manage his stress, and improve his interpersonal skills. During the remainder of Rothman's time at Emory, he continued to meet with Dean Sockwell regarding various matters at the law school.

In addition to the meetings with Dean Sockwell, Rothman asserts that other incidents also illustrate the hostile environment created by Emory. Specifically, Rothman claims that Emory's discriminatory animus was evidenced by some comments made by Howard Hunter, the dean of the law school, to Rothman at a law school "Town Meeting"; by Dean Hunter's and Dean Sockwell's failure to review the student-run moot court program's decision to deny admission to Rothman; and by the school's alleged maintenance of multiple files on him.

In addition to these alleged "hostile environment" incidents, Rothman also asserts that Dean Hunter discriminated against him by reporting his epileptic condition to the Illinois Board of Bar Examiners in a two-page letter on June 15, 1992. This letter supplies the primary (and perhaps only) vehicle for Rothman's discrimination claims under both the ADA and the Rehabilitation Act.

All candidates seeking admission to the Illinois bar must submit a certification form completed by the dean of the candidate's law school. This form seeks proof of the candidate's legal education, asks for information regarding the candidate's honesty and integrity, and further requests any information regarding the candidate's fitness for the practice of law. Dean Hunter declined to comment on whether he could recommend Rothman for a position of trust and confidence, but he stated that he had no records or information showing anything adverse to Rothman's honesty or integrity. In response to questions about Rothman's general conduct or anything else that might reflect adversely on his reputation or character, however, Dean Hunter attached a two-page confidential letter describing some of Rothman's troubles while at Emory. Specifically, the letter provided:

> Mr. Rothman exhibited open hostility at various times toward some of his peers and toward various people in positions of authority. He was chronically unprepared for one class and only began to take part after the instructor threatened him with an involuntary withdrawal. I mention these points to make full disclosure to your inquiries, but I hasten to add that Mr. Rothman responded to the counseling he received and completed his course of study creditably and without serious incident.

> To all appearances the problems he had in law school related to his chronic epilepsy and the medications he must take to keep it under control.

As a result of the letter, the Bar Examiners required Rothman to undergo a character and fitness interview, a procedure he argues was above and beyond the typical paper re-

view of an applicant's character and fitness.[1] The interviewer ultimately supported Rothman's admission, Rothman became a member of the Illinois bar in November 1992, and Rothman has admitted that he suffered no harm or injury as a result of the interview.

On February 26, 1993, Rothman filed the present discrimination action against Emory. His original complaint alleged causes of action under the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and various other federal and state causes of action. The district court dismissed all of Rothman's claims other than those pursuant to the ADA and the Rehabilitation Act. Rothman subsequently amended his complaint again alleging violations of the ADA, the Rehabilitation Act, and other state-law causes of action. Rothman also added the DOE as a defendant, alleging that the DOE violated the Rehabilitation Act by failing to investigate his administrative complaint against Emory.

On October 27, 1993, the district court again dismissed the claims against Emory except for the ADA and the Rehabilitation Act claims that fell within the applicable limitation periods. The court also dismissed all claims against the DOE because Rothman's administrative complaint was not timely filed. On July 17, 1995, the district court granted summary judgment for Emory on the ADA and Rehabilitation Act claims.

During this litigation, Rothman refused to make payments on the student loan debts he incurred while at Emory. On May 31, 1994, Emory therefore filed a counterclaim for breach of contract, seeking to recover the amounts Rothman had refused to repay.

The district court retained jurisdiction over this state-law counterclaim even after it had adjudicated all of the pending federal claims. On June 28, 1996, the district court entered summary judgment for Emory on its counterclaim, and it also imposed sanctions against Rothman based on his prior improper conduct in failing to abide by one of the court's discovery orders.

## II. ANALYSIS

### A. Rothman's Discrimination Claims

■ On July 17, 1995, the district court granted Emory's motion for summary judgment on Rothman's discrimination claims. We utilize a de novo standard of review in analyzing a district court's grant of summary judgment. *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 796 (7th Cir.1995). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2551–52, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the party opposing the motion and draw all justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). However, neither "the mere existence of *some* alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2509 nor the demonstration of "some metaphysical doubt as to the material facts,"

---

1. The Illinois Supreme Court Rules regarding the review of each bar applicant's character and fitness changed during the summer of 1992—the summer Rothman took the bar examination. Before July 1, 1992, Illinois Supreme Court Rule 708(b) provided that "[e]ach applicant shall appear" before the Committee on Character and Fitness of his district to provide evidence of his good moral character and general fitness for the practice of law. After July 1, 1992, however, Rule 708(b) provided that "each applicant shall appear" only "[i]f required by the committee." Thus, while Rothman's character and fitness materials were being considered by the Character

and Fitness Committee, the previous rule requiring personal interviews of applicants changed to give the Committees in each judicial district the discretion to interview applicants. Rothman provided no statistics regarding the number of applicants in 1992 who were required to undergo personal interviews. The Illinois Supreme Court has since adopted additional rules regarding the review procedures of an applicant's character and fitness. *See* The Board of Admissions to the Bar and the Committees on Character and Fitness for the State of Illinois Rules of Procedure 3.2a, 3.2b, 3.2c, & 5.1a.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) will sufficiently demonstrate a genuine issue of material fact. In that regard, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson,* 477 U.S. at 252.

■ Both the ADA and the Rehabilitation Act—statutes that are nearly identical, *see Crawford v. Indiana Dept. of Corrections,* 115 F.3d 481, 483 (7th Cir.1997) ("The Rehabilitation Act is materially identical to and the model for the ADA, ... except that it is limited to programs that receive federal financial assistance ....") (citations omitted)—are interpreted consistent with Title VII. *See DeLuca,* 53 F.3d at 797. Rothman therefore could prove his claims by presenting either direct or indirect evidence of discrimination. *See* id.

■ Direct evidence of discrimination is evidence that one can interpret as an acknowledgment of the employer's discriminatory intent. *See Hill v. Burrell Communications Group, Inc.,* 67 F.3d 665, 667 (7th Cir.1995). To constitute direct evidence of discrimination, in other words, "a statement must relate to the motivation of the decisionmaker responsible for the contested decision." *Cheek v. Peabody Coal Co.,* 97 F.3d 200, 203 (7th Cir.1996). If such explicit evidence is not available—which will often be the case because such remarks are rarely found, *see Mills v. First Fed. Sav. & Loan Ass'n,* 83 F.3d 833, 841 (7th Cir.1996)—a plaintiff can prove his discrimination claim via indirect or circumstantial evidence by employing the burden-shifting method originally established under *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this method, a plaintiff must first demonstrate a prima facie case for discrimination by proving that he is a member of a protected class, that he was performing to the legitimate expectations of the defendant, that he suffered an adverse

action, and that others not in the protected class were treated more favorably than him. *See DeLuca,* 53 F.3d at 797. If the plaintiff can demonstrate his prima facie case, the defendant bears the burden of articulating a legitimate, nondiscriminatory reason for any alleged adverse action towards the plaintiff. *See id.* If the defendant meets this burden, the plaintiff then has the opportunity to show that the defendant's articulated reason was merely a pretext for its discriminatory action. *See id.*

■ Rothman claims that the facts of this case, specifically the bar certification letter, represent direct evidence that Emory discriminated against him because of his epilepsy. We disagree. The bar certification letter, which Dean Hunter sent at the request of both Rothman and the Illinois Bar Examiners, does not exhibit any intent on behalf of Dean Hunter to discriminate against Rothman because of his epilepsy. Rather, the letter provides a candid, forthright, and ultimately benign if not supportive evaluation of a troubled student. The letter does not even hint that the Illinois Bar Examiners should reject Rothman's application because of his epilepsy. Rather, it attempts to report honestly about Rothman's difficulties, to highlight Rothman's ability to overcome his initial problems at Emory, and to provide a possible explanation for Rothman's troubles.

Rothman's claims also fail under the indirect method of proof because he cannot make out his prima facie case. Rothman's ADA claim involves only Dean Hunter's submission of the bar certification letter.[2] In pertinent part, the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Rothman claims that Emory discriminated against him, and therefore de-

---

2. Dean Hunter's submission of the bar certification letter is the only event occurring after the enactment of the applicable portion of the ADA on January 26, 1992, and thus is the only event we must consider. *See DeVito v. Chicago Park* *Dist.,* 83 F.3d 878, 879–80 (7th Cir.1996) (noting that the ADA is not applied retroactively); *Vande Zande v. Wisconsin Dept. of Admin.,* 44 F.3d 538, 545 (7th Cir.1995) (same).

prived him of the full and equal enjoyment of the services and privileges of its law school, by mentioning his disability in the bar certification letter.

The letter does not help Rothman with his prima facie case under the *McDonnell Douglas* indirect method of proof standard because Rothman suffered no adverse action. Rothman graduated from Emory and was admitted to the Illinois bar. The mere fact that the letter may have prompted the Illinois Bar Examiners to require Rothman to undergo a character and fitness interview does not constitute an adverse consequence.[3] At his deposition, Rothman admitted that he suffered no harm from this interview, and at oral argument he was similarly at a loss to explain how this interview provided an actionable adverse effect.[4]

■ Rothman similarly cannot make out a prima facie case for discrimination under the Rehabilitation Act. Rothman's Rehabilitation Act claim differs somewhat from his ADA claim. While his ADA claim involves only the bar certification letter, his Rehabilitation Act claim alleges a "hostile environment"-type of action that highlights the bar certification letter and other allegedly discriminatory acts. Specifically, the district court determined that only the following events fell within the Rehabilitation Act limitations peri-

od: some of the meetings between Rothman and Dean Sockwell, an incident between Rothman and Dean Hunter at a law school "Town Meeting," the deans' decision not to intervene in Rothman's moot court tryout, and the bar certification letter.

The Rehabilitation Act provides, in pertinent part, that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To succeed on a claim under this Act, Rothman must therefore show 1) that epilepsy is a disability as defined under the Act, 2) that he was otherwise qualified for the study of law, 3) that he was involved in programs receiving federal financial assistance, and 4) that he was excluded from participation, denied benefits, or otherwise discriminated against solely because of his epilepsy. *See Knapp v. Northwestern Univ.*, 101 F.3d 473, 478 (7th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2454, 138 L.Ed.2d 212 (1997) (No. 96–1622). Emory does not dispute that Rothman meets the first three elements, and thus our inquiry must focus on whether Rothman was excluded from participation in some activity, denied some benefit, or other-

---

**3.** This lack of adverse action similarly destroys Rothman's apparent claim that Emory retaliated against him in the bar certification letter because Rothman had challenged a number of illegal practices at Emory. For that matter, we also fail to see any causal connection between Rothman's complaints and the bar certification letter.

**4.** Emory also asserts two other defenses. First, Emory asks us to adopt an absolute privilege for communications between the Bar Examiners and those persons providing information regarding a bar applicant, much like the courts have done in Illinois. *See Kalish v. Illinois Educ. Ass'n*, 157 Ill.App.3d 969, 110 Ill.Dec. 72, 78–79, 510 N.E.2d 1103, 1109–10 (1987); *see also Dugas v. City of Harahan, La.*, 978 F.2d 193, 197–99 (5th Cir.1992). Second, Emory claims that Rothman waived any action based on Dean Hunter's letter through his execution of an "Authorization and Release" as part of his Illinois Bar Application. That application required candidates to release from liability any person furnishing documents or information to the Illinois Board of Law Examiners during the Board's investigation of the

candidate's moral character, reputation, and fitness for the practice of law.

We find exceptional force in both of Emory's defenses. Without question, an absolute privilege would improve the Bar Examiners' "ability to obtain frank and candid evaluations of an applicant's 'moral character, reputation and fitness for the practice of law'" by protecting law school deans and other character references from "expos[ure] to retaliatory libel actions by disgruntled applicants." *See Kalish*, 110 Ill.Dec. at 78, 510 N.E.2d at 1109. Moreover, we believe that Rothman would be hard pressed to challenge the voluntariness of the waiver he provided by signing the "Authorization and Release" form. *See id.* at 78, 510 N.E.2d at 1109 n. 5 ("The practice of law is a privilege, not a right, and in granting that privilege the supreme court may impose any reasonable conditions within its control."). We do not base our judgment on these grounds, however, because Rothman suffered no cognizable harm from the bar certification letter and Emory may not have properly preserved these defenses as it failed to raise them in its answer to Rothman's amended complaint.

wise discriminated against solely due to his epilepsy.

We admittedly have some difficulty comprehending Rothman's Rehabilitation Act claim because so many of the incidents that he maintains involve discrimination have absolutely nothing to do with epilepsy. A brief review of Emory's allegedly discriminatory acts illustrates this point. First, neither the content, tone, nor mere existence of Rothman's numerous meetings with Dean Sockwell demonstrate a hostile environment resulting from his epilepsy. To the contrary, these meetings show that Rothman often sought Dean Sockwell's help in dealing with his numerous problems at the law school, that Dean Sockwell was genuinely concerned about Rothman, that she consistently offered her help and support, and that Rothman would sometimes reject or criticize this requested assistance. Moreover, the record reveals that these meetings did not focus solely on Rothman's epilepsy, but also addressed his special exam requests, his poor grades, and his problems with classmates and faculty members. We fail to see any meaningful evidence of discrimination based on his epilepsy.

Dean Hunter's and Dean Sockwell's decision not to intervene in the student-run moot court program similarly suggests no discriminatory animus. Rothman failed to gain admission to the moot court program because he submitted a brief that failed to address the issues requested by the problem committee. Instead, Rothman wrote a brief discussing different issues that he believed were more important. As a result, Rothman essentially failed the moot court brief and the student organizers did not select him for the program. The decision of the two deans neither to intercede in this decision nor to review personally Rothman's brief had nothing to do with Rothman's epilepsy.

Furthermore, we fail to see any connection between Rothman's epilepsy and the comments that Dean Hunter made to Rothman at the "Town Meeting." The law school held a series of "Town Meetings" to discuss the school's sexual harassment policies in light of a professor who had recently resigned under the accusation of behaving improperly towards some female students. At the end of one meeting, Rothman asked Dean Hunter if he would bug his office to protect against lawsuits; Hunter rejected Rothman's question replying, "This is not Watergate." Rothman claims that other students made far more critical remarks without the same "ensuing consequences," and thus he maintains that this comment somehow demonstrated that Dean Hunter was discriminating against him because of his epilepsy. The incredulity of this assertion speaks for itself. Finally, the bar certification letter could not have added to Rothman's alleged hostile environment because Dean Hunter sent the letter to the Illinois Bar Examiners in confidence. And as discussed above, Rothman suffered no adverse consequence resulting from that letter.

As noted by the district court, Rothman's claims rest primarily on his own perceptions of Emory's motivations, which generally provide an ineffectual means of proving discrimination. *See Russell v. Acme–Evans Co.*, 51 F.3d 64, 68 (7th Cir.1995). Moreover, we agree that this "record reflects an educational institution forced to be cautious and acquiescent in dealing with a prickly student who is using federal law as a weapon. It does not reflect any basis for finding discrimination based on disability." *Rothman v. Emory Univ.*, No. 93 C 1240, at 12 (N.D.Ill. July 17, 1995). Considering all of the above situations, whether taken individually or in concert, we easily find that Rothman cannot make out a prima facie case of discrimination under either the ADA or the Rehabilitation Act.

## B. Emory's Counterclaim for Repayment of Student Loans

Rothman next asserts that the district court erred in granting Emory summary judgment on Emory's counterclaim for recovery of his unpaid student loans. In this regard, Rothman relies on two arguments. First he claims that the district court should not have retained jurisdiction over this state-law matter. Rothman therefore asks us to dismiss Emory's contract claim so it can be tried in state court. Second, Rothman contends that even if the district court properly

retained jurisdiction, Georgia contract law entitles him to summary judgment because Emory represented that it would not discriminate against him, Emory did discriminate, and Emory therefore did not perform its part of the contract. Like the district court, we agree that Emory was entitled to the $28,329.97 award at summary judgment.

■ Regarding the jurisdiction question, we must determine whether 28 U.S.C. § 1367 permits the district court to retain supplemental jurisdiction over a counterclaim when the original claims have been adjudicated and there is no independent basis of federal jurisdiction for the counterclaim. Prior to the enactment of § 1367, our case law clearly provided that federal courts have supplemental jurisdiction over compulsory counterclaims, but not over permissive counterclaims. See Unique Concepts, Inc. v. Manuel, 930 F.2d 573, 574–75 (7th Cir.), aff'd, 937 F.2d 622 (Fed.Cir.1991). Now, § 1367 provides that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). This language now permits district courts to maintain supplemental jurisdiction over counterclaims, whether compulsory or permissive, so long as the counterclaims "are so related to" the original claims that they form the same case or controversy. See Channell v. Citicorp Nat'l Servs., Inc., 89 F.3d 379, 385–87 (7th Cir.1996); see also Stromberg Metal Works, Inc. v. Press Mechanical, Inc., 77 F.3d 928, 930–33 (7th Cir.1996) (finding that § 1367(a) permits a court to hear a claim by a plaintiff whose loss does not meet the minimum amount for diversity jurisdiction when that plaintiff's claim is so related to the claim of another plaintiff that does satisfy the diversity jurisdiction requirements).

In this case, Rothman brought his discrimination claims under the ADA and the Rehabilitation Act, thereby supplying the district court with federal question subject matter jurisdiction. Emory's counterclaim, which did not have its own basis for federal juris-

diction, sought to force Rothman to repay the indebtedness on his student loans. Rothman had refused to make these payments believing that Emory's violation of the antidiscrimination laws relieved him of that responsibility. As such, Emory's counterclaim, whether compulsory or permissive, was "so related to" Rothman's original claims that they form the same case or controversy.

■ The fundamental question then is whether the district court erred in retaining jurisdiction over Emory's state-law claim after it adjudicated the original federal claims brought by Rothman. Ordinarily, a federal court relinquishes jurisdiction of a pendent state-law claim when the federal claims are dismissed before trial. See Wright v. Associated Ins. Cos., 29 F.3d 1244, 1251 (7th Cir. 1994); Brazinski v. Amoco Petroleum Additives Co., 6 F.3d 1176, 1181–82 (7th Cir.1993). Courts, however, are not required to dismiss pendent state-law claims once the primary federal claims have been dismissed. See Wright, 29 F.3d at 1251; Brazinski, 6 F.3d at 1182; see also Schluga v. City of Milwaukee, 101 F.3d 60, 61 (7th Cir.1996) ("Since the duty to relinquish federal jurisdiction over pendent [i.e., supplemental] ... state law claims when the federal claim falls out before trial is presumptive rather than absolute, ... the district court had the power to enter a judgment on the merits of [plaintiff's] state claims.") (citation omitted). In that regard, there are some cases "in which the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point to federal decision of the state-law claims on the merits." Wright, 29 F.3d at 1251.

The present case represents a good example where a federal court properly exercised its discretion to retain jurisdiction over a state-law claim because the primary issues underlying Emory's discrimination claims were already decided against Rothman, and thus it was abundantly clear how Emory's state claim should be decided. See id. ("If the district court, in deciding a federal claim, decides an issue dispositive of a pendent claim, there is no use leaving the latter to the state court."). Rothman refused to repay his student loans claiming that Emory discrimi-

nated against him in violation of federal law and that Georgia law thus relieved him of paying back the loans. As shown above, however, Rothman provided no material evidence of discrimination. Moreover, the district court's adjudication of Emory's state-law claim furthered judicial economy by relieving the state court from the burden of relitigating Rothman's discrimination contentions. *See id.* Finally, Rothman's convoluted brief fails to convince this court how any affirmative defense raised pursuant to Georgia law could alter the clear facts of this case—*i.e.*, that Emory did not discriminate against Rothman because of his epilepsy and that Rothman willfully failed to repay his student loans. We therefore affirm the district court's grant of summary judgment on Emory's counterclaim.

## C. Discovery Sanctions

█ During the arduous discovery process in this case, the district court ordered Rothman to produce certain documents as required by Federal Rule of Civil Procedure 34. In response, however, Rothman produced three large bankers' boxes of college papers and numerous other unrelated, non-responsive materials. Accordingly, the district court sanctioned Rothman for violating the order. Rothman claims that the district court denied him due process in imposing sanctions without notice, an opportunity to respond, or a hearing regarding the dispute. He also challenges the appropriateness of the amount of the monetary sanction. Like his other claims, this one is entirely without merit.

The record readily demonstrates that Rothman received due process. At an October 17, 1994 hearing; Emory informed Rothman and the district court that it intended to move for sanctions based on Rothman's discovery violations once it received Rothman's Rule 26 production certification. Two later hearings on November 18, 1994 and December 5, 1994 both involved discussions of Rothman's improper document production and thus provided him with the opportunity to

respond to any allegations that he was abusing the discovery process. At the latter hearing, the court informed the parties that it would allow Emory to recover its expenses for copying the irrelevant materials produced by Rothman. On November 30, 1995, Emory filed a motion for costs and fees based on the court's December 5, 1994 ruling, and Rothman *responded* to Emory's motion on March 21, 1996. The district court subsequently ruled on the motion, awarding Emory $2,767.22. Based on this record, we cannot fathom how the court could have deprived Rothman of his right to due process in saddling him with discovery sanctions.

█ Furthermore, because Rothman blatantly (and repeatedly) rebuffed his obligation to sort through the documents and produce only those responsive to Emory's request, the district court need not have conducted a full hearing on Emory's motion for sanctions. *See Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1494–95 (7th Cir.1989) (finding that the right to a hearing regarding sanctions is limited to cases where a hearing would assist the court). Thus, even if Rothman was not given notice, an opportunity to respond, or an appropriate hearing, we would easily find that the district court did not abuse its discretion in imposing sanctions under Federal Rules of Civil Procedure 26(g) and 37.

█ Finally, the court clearly imposed a just penalty of $2,767.22, which includes amounts for the attorney's fees Emory incurred in reviewing the non-responsive documents and for part of the photocopying expense. As such, we reject Rothman's claim.

## D. Dismissal of Claims Against the DOE

On January 22, 1993, Rothman filed an administrative complaint with the DOE alleging that Dean Hunter mentioned Rothman's epilepsy in the bar certification letter in order to retaliate for prior complaints Rothman had made against the school.[5] Rothman acknowledged that his administrative complaint was untimely because it was not filed within

---

**5.** Presumably, Rothman's prior complaint to the school involved its alleged mishandling of his student file, which Rothman asserts was in viola-

tion of the Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232g.

180 days of the alleged discrimination (*i.e.*, June 16, 1992, the date the bar certification letter was mailed) as required by 34 C.F.R. § 100.7(b), and he therefore asked the DOE for a waiver of the time limit. The regulations promulgated by the DOE Office of Civil Rights permit the DOE to grant such a waiver when (1) the complainant cannot reasonably be expected to know the act was discriminatory within the 180–day period, and (2) the complaint is filed within 60 days after the complainant became aware of the discriminatory act. On February 5, 1993, the DOE rejected Rothman's request for a waiver because he did not file his administrative complaint until 142 days after he learned of the allegedly unfavorable recommendation from Dean Hunter.

 Rothman subsequently amended his pending complaint in federal court against Emory by adding the DOE as a defendant. He complained that the DOE violated the Rehabilitation Act when it closed his untimely administrative complaint without investigation, and he therefore sought a declaratory judgment and mandatory injunction that would require the DOE to investigate his complaint. The district court granted the DOE's motion to dismiss, but the court did not expressly state whether it dismissed the claim for lack of jurisdiction or failure to state a claim.[6] Nonetheless, the court found that it had "virtually no jurisdiction to compel an agency to exercise its discretionary authority in a particular manner." *Rothman v. Emory Univ.*, No. 93 C 1240, at 3 (N.D.Ill. Oct. 27, 1993). Moreover, the court reasoned that in the absence of a congressional mandate regarding a statute of limitations period, the DOE had the right to establish its own rational limitations procedures, which the DOE appropriately employed in this case.

 In the district court, Rothman took the position that he complied with 34 C.F.R. sec.100.7(b)—the appropriate administrative regulation under Title VI of the Civil Rights Act of 1964—claiming that the 180–day limitation period only begins to run when the

complainant discovers the wrongful conduct. Rothman, however, abandoned this argument on appeal. Now for the first time, Rothman asserts that the DOE applied the wrong regulation governing the time limitations on his administrative complaint. Specifically, Rothman argues that the district court should have applied the time limit established by 34 C.F.R. § 99.64, which applies to complaints alleging violations of the Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232g, rather than the statute of limitations under 34 C.F.R. § 100.7(b). Because Rothman raises this argument for the first time on appeal, we need not address it. *See In re Kroner*, 953 F.2d 317, 319 (7th Cir.1992); *Youker v. Gulley*, 536 F.2d 184, 186 (7th Cir.1976).

Accordingly, we AFFIRM the district court's grant of summary judgment for Emory on Rothman's discrimination claims, its grant of summary judgment for Emory on Emory's breach of contract counterclaim, and its grant of the DOE's motion to dismiss on Rothman's administrative claims.

---

**6.** We review *de novo* a district court's decision to dismiss a claim either for lack of subject matter jurisdiction or failure to state a claim. *See Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir.1993) (lack of subject matter jurisdiction); *Wade v. Hopper*, 993 F.2d 1246, 1250 (7th Cir.1993) (failure to state a claim).