**Alan D. DIKCIS, Plaintiff,**

v.

**NALCO CHEMICAL COMPANY, Defendant.**

**No. 96 C 2482.**

United States District Court. N.D. Illinois. Eastern Division.

Aug. 5, 1997.

Danuta Bembenista Panich, Janet Lynn Hall, Mayer, Brown & Platt, Chicago, IL, for Defendant.

Norman Ruber, Law Offices of Norman Ruber, Chicago, IL, for Plaintiff.

## OPINION AND ORDER

NORGLE, District Judge.

Before the court is Defendant Nalco Chemical Company's Motion For Summary Judgment. For the following reasons, the court grants Defendant's motion.

### I. BACKGROUND [1]

Defendant, Nalco Chemical Company ("Nalco"), hired Plaintiff, Alan D. Dikcis ("Dikcis"), for the position of Senior Cost Accountant in August 1994. His primary duties were to prepare warehouse reconciliation documents and monthly cost analysis reports. In order to perform his duties, Dikcis had to extract data from Nalco's main frame computer using a custom report writing program called FOCUS. Nalco sent Dikcis to a training class to learn how to use the

---

1. The following facts are taken from the court's reconciliation of the parties Local Rule 12(M) and 12(N) statements.

FOCUS program. Dikcis received the same or similar FOCUS program training as other employees in his department.

Before beginning his employment, Nalco required Dikcis to submit to a physical examination. As a part of his physical examination, Dikcis filled out medical forms requesting information about his medical history. Although Dikcis had allegedly experienced certain symptoms, including dizziness, and had received medical treatment for clinical depression since December 1993, Dikcis did not include these facts as part of his medical history on the form provided. Dikcis passed his physical examination, and began his job on September 2, 1994.

Between December 2, 1994, and February 16, 1995, Dikcis received psychiatric treatment from Dr. Margaret Tormay ("Tormay"). Dikcis experienced symptoms of depression, including diminished concentration, dizziness, and head pressure. Tormay's differential diagnoses of Dikcis included psychosis and anxiety.

Between May 27, 1995, and November 30, 1996, Dikcis received psychiatric treatment from Dr. Sudhir Gokhale ("Gokhale"). Gokhale diagnosed Dikcis with "major depression with psychosis." In September 1995, Dikcis told Gokhale that he was doing better, but that his symptoms (diminished concentration, dizziness, and head pressure) were still present.

Despite Dikcis' mental condition, and resulting symptoms, Dikcis states that his mental condition did not effect his job performance, and that he was able to perform his job duties.

Colleen Phillip ("Phillip"), a Senior Cost Accountant, trained Dikcis for three to four months. During the training period, Phillip does not remember anything remarkable about Dikcis' job performance. Phillip did note, however, that Dikcis had a tendency to walk away from her when she was talking with him; Phillip discussed this with Phil Marusarz ("Marusarz") approximately once every month.

Marusarz, Manager of the Cost Accounting Department, and Dikcis' immediate supervisor, noted that Dikcis was not adequately performing his job. Thus, Marusarz criticized Dikcis for poor job performance and identified his deficiencies. Specifically, Marusarz discussed with Dikcis the following: (1) his failure to properly perform his monthly warehouse reconciliation duties; (2) his failure to change the date on a FOCUS program to extract the correct information from the main frame computer; (3) his failure to load certain financial data on a monthly, rather than quarterly, basis; and (4) his failure to prepare a report with the correct financial information for the Chief Financial Officer.

In August 1995, Marusarz recommended to Robert Ratliff ("Ratliff"), Nalco's Controller and Marusarz's immediate supervisor, that Nalco terminate Dikcis' employment. Marusarz's recommendation was based on Dikcis' inadequate job performance, and his inability to take on any supervisory responsibilities in the future. After reviewing Dikcis' performance documents and several of the reports Dikcis prepared, Ratliff agreed with Marusarz and approved Dikcis' termination. Marusarz notified Dikcis that he was terminated on September 19, 1995.

Dikcis never told anyone at Nalco that he was diagnosed with clinical depression or that he experienced any symptoms of any illness. Nevertheless, Dikcis alleges that Nalco knew or perceived him as "disabled" and terminated him in violation of the Americans With Disabilities Act ("ADA"). *See* 42 U.S.C. §§ 12101–12117.

Dikcis relies on several remarks of his colleagues. Dikcis alleges that Jim Perkins ("Perkins") told him in September 1994 that "his mannerisms were noticeably erratic and that he should slow down and calm down." (Plaintiff's Resp. at 27.) Dikcis further alleges that Marusarz told him in the middle of November 1994 that "his wheels were spinning off and that he should get medical help." *Id.* Finally, Dikcis alleges that Ratliff told him "he was depressed on the day after his discharge." *Id.*

Additionally, Dikcis alleges that Nalco had a policy against employing "disabled" individuals. According to Dikcis, Perkins told him that "Nalco management did not want dis-

abled people working there due to the cost." *Id.* at 32. Dikcis also alleges that Perkins stated that a Nalco employee cost Nalco close to $100,000 and remarked that Nalco was not a charity. (Dikcis' 12(N) Stmt. ¶ 40.)

Nalco moves for summary judgment and argues that Dikcis cannot show that he is a "qualified individual with a disability," as that phrase is defined by the ADA. In addition, Nalco argues that Dikcis cannot establish a prima facie case of disability discrimination or show that Nalco's legitimate, nondiscriminatory reasons for terminating him were pretext for discrimination.

## II.  DISCUSSION

### A.  Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Salima v. Scherwood South, Inc.*, 38 F.3d 929, 931 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The summary judgment "standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir.1993).

When considering all the evidence presented in a motion for summary judgment, a court cannot make credibility determinations nor can it choose between competing possible inferences. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). The court views the record, and resolves all reasonable inferences drawn from the record, in the light most favorable to the non-moving party. *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir.1997). Accordingly, if the evidence presented by the parties is subject to conflicting interpretations, or if reasonable minds could differ as to its significance, summary judgment must not be granted. *O'Connor v. Chicago Transit Auth.*, 985 F.2d 1362, 1366 (7th Cir.1993).

Yet, the standard does nothing to alter the burden of proof. "If the non-moving party bears the burden of proof on an issue, ... that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact." *Sample v. Aldi, Inc.*, 61 F.3d 544, 547 (7th Cir.1995). The non-moving party, therefore, will not survive summary judgment with merely a scintilla of evidence supporting its position. *Essex v. United Parcel Serv. Inc.*, 111 F.3d 1304, 1308–09 (7th Cir. 1997). Instead, "the question is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*

### B.  Disability Discrimination

In proving a disability discrimination claim, Dikcis may either present direct evidence of discrimination or follow the burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 797 (7th Cir.1995). The Seventh Circuit defines direct evidence "as evidence which 'if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption.'" *Plair*, 105 F.3d at 347 (citation omitted). In an employment discrimination case, direct evidence "'must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question.'" *Cowan v. Glenbrook Security Serv., Inc.*, 123 F.3d 438, 443 (7th Cir. 1997). Dikcis has not presented any direct evidence of discrimination.

Under the *McDonnell Douglas* scheme, Dikcis must first establish a prima facie case of disability discrimination by a preponderance of the evidence. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993); *Rothman v. Emory Univ.*, 123 F.3d 446, 451 (7th Cir. 1997); *Leffel v. Valley Fin. Serv.*, 113 F.3d 787, 792 (7th Cir.1997). Dikcis can establish

a prima facie case of disability discrimination by demonstrating that: (1) he is a member of a protected class; (2) he performed his work well enough to meet Nalco's legitimate work expectations; and (3) he suffered from a materially adverse employment decision. *Rothman,* 123 F.3d at 451.

If Dikcis establishes the above elements, a rebuttable presumption of unlawful discrimination arises. *Id.* To rebut the *McDonnell Douglas* presumption, the burden of production, not proof, then shifts to Nalco to articulate legitimate, nondiscriminatory reasons for its employment decisions. *Id.* If Nalco articulates legitimate, nondiscriminatory reasons, Dikcis must provide evidence to show that Nalco's articulated reasons were merely a pretext for its disability discrimination to survive a motion for summary judgment. *Id.*

Despite the shifts in burden of production, the burden of persuasion always rests with Dikcis: he must prove that Nalco intentionally made an adverse employment decision against him because of his actual or perceived disability. *Hicks,* at 508, 113 S.Ct. at 2747–48; *DeLuca,* 53 F.3d at 798.

1. Prima Facie Case

Nalco does not argue that it made an adverse employment decision against Dikcis. Nalco does, however, argue that Dikcis cannot establish a prima facie case of disability discrimination because he is not a member of the protected class and he did not meet Nalco's legitimate work expectations. The court agrees.

a. Protected Class

The ADA protects "a qualified individual with a disability" against discrimination. See 42 U.S.C. § 12112. As such, to be a member of the protected class, Dikcis must show that he is a "qualified individual" and that he has a "disability" as these terms are defined in the ADA. Determination of whether Dikcis meets the "qualified individual with a disability" criteria is determined as of the time of his termination. *Weiler v. Household Fin. Corp.,* 101 F.3d 519, 524 (7th Cir.1996).

A "qualified individual" is an individual who satisfies " 'the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc . . . . [and is] able to 'perform the essential functions of the position held or desired, with or without reasonable accommodation.' " *Id.* (citations omitted); *see also* 42 U.S.C. § 12111(8).

Relying on Dikcis' application to the Social Security Administration ("SSA"), Nalco argues that Dikcis is not a qualified individual. In applying for disability benefits, Dikcis asserted that his clinical depression is a disabling condition which prevents him from working, and that he has been unable to work since September 19, 1995. Nalco, therefore, argues that Dikcis is now precluded from arguing that he was able to perform the essential functions associated with his position at the time of his termination.

The burden of proving that one is capable of performing the essential functions of one's job is not on the employer, but on the employee. *Miller v. Illinois Dept. of Corrections,* 107 F.3d 483, 484–85 (7th Cir.1997) (holding that if the plaintiff could not have performed the essential functions of being a correctional officer due to her blindness, her employer could not be liable under the ADA even if the warden fired her for an improper purpose). Consequently, Dikcis' representation to SSA regarding his ability to work is of great importance.

Many federal courts that have opined that an individual who represents to the SSA that he is totally disabled and unable to work, cannot claim in a private civil action that he is a qualified individual under the ADA. *See Griffith v. Wal–Mart,* 930 F.Supp. 1167, 1170 (E.D.Ky.1996) (survey of jurisdictional approaches on the issue); *see also Bollenbacher v. Helena Chem. Corp.,* 934 F.Supp. 1015, 1026–27 (N.D.Ind.1996). *But cf. Overton v. Reilly,* 977 F.2d 1190, 1196 (7th Cir.1992) (holding that the SSA determination that an individual was entitled to disability benefits could not be "construed as a judgment that [he] could not do his job at the EPA.")

Nevertheless, the court is not inclined to hold that Dikcis' representation to SSA alone is sufficient to bar him from claiming he is a

qualified individual under the ADA.[2] Therefore, the court will continue its analysis and determine whether Dikcis had a disability at the time of his termination.[3]

An individual has a "disability" under the ADA if (1) "a physical or mental impairment ... substantially limits one or more of the major life activities of such individual"; (2) he has "a record of such an impairment"; or (3) he is "regarded as having such an impairment." *See* 42 U.S.C. § 12102(2).

■ " 'Substantially limits' means that the person is either unable to perform a major life function or 'significantly restricted as to the condition, manner or duration' under which the individual can perform a particular major life function, as compared to the average person in the general population." *Weiler*, 101 F.3d at 523 (citation omitted).

"Major life activities" include " 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.' " *Id.* (citation omitted). To establish that Dikcis is substantially limited in his ability to work, he must show that his impairment substantially limits his employment generally; it is not enough to show that he is unable to perform a particular job for a particular employer. *Id.* at 524.

Dikcis argues that Dr. Tormay and Dr. Gokhale's diagnosis and treatment evidence his disability. Specifically, Dikcis argues that he had "symptoms of depression which included decreased motivation, poor energy, poor sleep, disturbed dreams and crying spells. He had lost weight and had episodic thoughts of suicide. He was dizzy and also had head pressure." (Plaintiffs Resp. at 26.) Dikcis further states that he "had a dissasociative [sic] experience where the top half of his body was spinning in one direction and the bottom half spinning in the other." *Id.*

However, Dikcis does not state which major life activities were substantially limited,

or how he was limited. As such, beyond his own legal conclusion, Dikcis fails to offer sufficient evidence to show that his mental condition, and resulting symptoms, substantially limited any of his major life activities at the time of his termination. " 'Many impairments do not impact an individual's life to the degree that they constitute disabling impairments.' " *Hamm v. Runyon*, 51 F.3d 721, 726 (7th Cir.1995). Dikcis has offered nothing which indicates that he had a disabling impairment. Thus, Dikcis cannot meet his burden of proof by merely stating that his symptoms "impacted upon numerous major life activities." *See Essex*, 111 F.3d at 1308–09.

In addition, Dikcis admitted that many of the symptoms he experienced had substantially subsided as of January 1995. Dikcis also admitted that his mental condition, despite his diminished concentration and dizziness, did not effect his job performance, and that he was able to perform his duties. Dikcis' admissions conclusively establish that he did not have a disability within the meaning of the ADA at the time of his termination. *See Weiler*, 101 F.3d at 525 (court held that the plaintiff did not have a disability as that term is defined in the ADA because the court opined that "[if the plaintiff] could do the same job for another supervisor, she can do the job, and does not qualify under the ADA.")

■ Even assuming that Dikcis suffered from a disability, Dikcis cannot establish a prima facie case of disability discrimination because there is no evidence that Nalco knew of his disability. Nalco cannot be liable under the ADA for firing Dikcis when Nalco indisputably had no knowledge of his disability. *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir.1995). If Nalco did not know of Dikcis' disability, then Nalco could not have fired Dikcis because of his disability. *Id.*

---

**2.** Dikcis' inconsistent representation to the SSA is unlike the situation in which a litigant pleads particulars, and they show that he has no claim. Under those circumstance, he would be out of luck, as he would have pleaded himself out of court. *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 78 (7th Cir.1992); *Conn v. GATX Terminals*

*Corp.*, 18 F.3d 417, 419 (7th Cir.1994); *Fryman v. United States*, 901 F.2d 79, 82 (7th Cir.1990).

**3.** The court is mindful of the debilitating effects of depression. *See Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir.1995).

Dikcis admitted that he did not inform anyone at Nalco that he had been diagnosed with clinical depression; nor did he inform anyone that he suffered from any symptoms of any illness. Based upon a few colleagues' stray remarks,[4] Dikcis argues that Nalco knew of his disability. Even assuming that Dikcis' colleagues made these stray remarks because they witnessed something out of the ordinary about Dikcis' demeanor or behavior, mere knowledge of the alleged symptoms or effects of a disability alone is insufficient to establish knowledge of the disability. *See Hamm*, 51 F.3d at 725.

■] As Dikcis fails to show that he suffered from a disability or that Nalco knew he suffered from a disability, he fails to establish a prima facie case of disability discrimination based on his actual disability. Thus, the court will address whether Dikcis can claim disability discrimination based upon a "perceived disability."

Even though an individual does not suffer from a substantially limiting disability, he may still be protected under the ADA if he is "regarded as having such an impairment." *See* 42 U.S.C. § 12102(2)(C). In order for Dikcis to prevail under this theory, he must show that Nalco perceived him as having an impairment that substantially limited one or more of his major life activities. *Gonzalez v. Perfect Carton Corp.*, No. 95 C 5476, 1996 WL 89058, at *3 (N.D.Ill. Feb.28, 1996).

Dikcis relies on several stray remarks as evidence that Nalco regarded him as disabled. In September 1994, Perkins allegedly told Dikcis that "his mannerisms were noticeably erratic and that he should slow down and calm down." (Plaintiff's Resp. at 27.) In the middle of November 1994, Marusarz allegedly told Dikcis that "his wheels were spinning off and that he should get medical help." *Id.* Finally, Ratliff allegedly told Dikcis that "he was depressed on the day after his discharge." *Id.*

Assuming that these alleged statements were made, none of these statements establish that Perkins, Marusarz, or Ratliff regarded Dikcis as being substantially limited in one or more of his major life activities. "Courts have uniformly held 'that an employer does not necessarily regard an employee as handicapped simply by finding the employee to be incapable of satisfying the singular demands of a particular job."' *See Gonzalez*, 1996 WL 89058, at *3 (citations omitted); *see also, Weiler*, 101 F.3d at 524 (Court held that in order to establish that an individual is substantially limited in his ability to work, he must show that his impairment substantially limits his employment generally; it is not enough to show that he is unable to perform a particular job for a particular employer.)

As such, even if these statements could be reasonably interpreted as somehow meaning that Dikcis suffered from a mental condition that effected his particular job performance, it could not be interpreted to mean that Dikcis suffered from a disability that effected his employment generally. Thus, Perkins, Marusarz, or Ratliff's remarks are insufficient to establish that Nalco regarded him as having a disability.

Because Dikcis fails to meet his burden of showing that he suffered from a disability as it is defined in the ADA, or that Nalco regarded him as disabled, Dikcis fails to show that he is a member of the protected class under the ADA. As such, Dikcis fails to establish a prima facie case, and Nalco is entitled to summary judgment.

Although the court need not go any further in its analysis, the court will continue its burden-shifting analysis, considering the other elements of a prima facie case.

b. Legitimate Work Expectations

■ Nalco sets forth specific facts establishing that it was dissatisfied with Dikcis' job performance.[5] Dikcis, however, does not

---

4. The court will address the nature of these stray remarks in greater detail when the court determines whether Nalco perceived Dikcis as having a disability.

5. Nalco also argues that Dikcis did not meet its expectation that he would take on supervisory

responsibilities. Dikcis argues that Nalco did not inform him of such an expectation. As such, the court will not consider this expectation. *See Albright v. Aunt Martha's Youth Serv. Ctr., Inc.*, No. 93–4913, 1995 WL 330762 (N.D.Ill. May 30, 1995) ("To establish that an employer's expecta-

attempt to address these facts; in fact, Dikcis admits that Marusarz criticized him for poor job performance. Dikcis simply argues that Marusarz's May 1995 performance evaluation of Dikcis is generally favorable, that Phillip testified that Dikcis' job performance was satisfactory, and that Dikcis never received any written warning of inadequate performance.

First, contrary to Dikcis' argument, Marusarz's May 1995 evaluation evidences that Dikcis was not meeting Nalco's legitimate work expectations. In the evaluation, Marusarz stated that Dikcis "exhibits little skill" with the FOCUS program, and that Dikcis' FOCUS errors produced incorrect results. Marusarz further stated in the evaluation that "One of the errors, failure to change the date selection criteria, was a recurring error from prior months and was disturbing to me because of its rudimentary nature." (Plaintiff's Ex. H at D0045.)

The evaluation further evidences that Marusarz expressed his concern to Dikcis, and informed him that "he did not seem to be developing in this area and that mastery of this skill was a requirement for success in the department due to the nature of our IS environment." *Id.* Marusarz also told Dikcis that his "PC skills were improving but were not yet at the level [he] thought appropriate for [Dikcis'] responsibilities." *Id.* Moreover, Marusarz told Dikcis that "[he] did not believe [Dikcis] understood the systems and processes behind warehous [sic] accounting. . . ." *Id.*

Dikcis admits that Marusarz spoke to him about the following job performance issues: (1) failure to properly perform his monthly warehouse reconciliation duties; (2) failure to change the date on a FOCUS program to extract the correct information from the main frame computer; (3) failure to load certain financial data on a monthly, rather than quarterly, basis; and (4) failure to prepare a report with the correct financial information for the Chief Financial Officer. As such, Dikcis cannot show that he met Nalco's legitimate work expectations.

Next, with respect to Phillip's testimony, Dikcis admits that Phillip trained him for three to four months and that Phillip "did not review or proofread" Dikcis' work thereafter. (Plaintiffs 12(N) Stmt. ¶¶ 19–22.) As such, Phillip's testimony does not evidence that Dikcis met Nalco's expectations at the time of his termination.

Finally, with respect to Dikcis' lack of written warning argument, Dikcis does not present any evidence that he was entitled to a written warning. Although Dikcis argues that Nalco had a policy of giving warnings to employees prior to their discharge, Dikcis does not present any evidence to show that such a warning must be in writing prior to termination. Perkins' statement that "the employee needs to be informed they are in trouble to give the person an opportunity to do something" does not demonstrate a requirement of a written warning. (Plaintiff's Resp. at 30.)

Therefore, if Dikcis could show that he was a member of the protected class, he still could not establish that he performed up to Nalco's legitimate job expectations; thus, he could not establish a prima facie case of disability discrimination. As such, Nalco is entitled to summary judgment. Nevertheless, the court will continue its analysis.

### 2. Pretext for Discrimination

■ Assuming, arguendo, that Dikcis did meet his burden of establishing a prima facie case, he does not argue that Nalco failed to meet its burden of articulating a legitimate, nondiscriminatory reason for terminating him. Thus, the court will address whether Dikcis can meet his renewed burden of showing that Nalco's articulated reasons are pretext for discrimination. "Pretext means a lie, specifically a phony reason for some action." *Plair,* 105 F.3d at 348. Merely casting doubt on an employer's stated reason for its employment decision is insufficient to establish pretext. Weisbrot v. *Medical College of Wis.,* 79 F.3d 677, 682 (7th Cir.1996). Dikcis must " 'produce evidence from which a rational factfinder could infer that the company

---

tions were legitimate, courts must determine whether the employer communicated those ex-

pectations to the employee and whether those expectations were unreasonable.")

 

lied about its proffered reasons for [his] dismissal." ' *Id.* (citations omitted).

To establish pretext, Dikcis may introduce evidence that demonstrates "(1) the proffered reasons are factually baseless; (2) the proffered reasons were not the actual motivation for the discharge; or (3) the proffered reasons were insufficient to motivate the discharge." *Wolf v. Buss (Am.) Inc.,* 77 F.3d 914, 919 (7th Cir.1996). Dikcis fails to do so.

Dikcis presents the same evidence for pretext as he presented for purposes of determining (1) whether Nalco knew of Dikcis' alleged disability and (2) whether Dikcis met Nalco's legitimate work expectations. Without reiterating its earlier analysis, the court will briefly discuss whether a reasonable factfinder could infer that Nalco lied about its reasons for terminating Dikcis.

Dikcis does not argue, or present any evidence to show, that Nalco's proffered reason—dissatisfaction with Dikcis' job performance—is factually baseless, or insufficient to motivate termination. Dikcis admitted that Marusarz spoke to him about several job performance issues, and that he did not develop skills required to succeed in his position.

Dikcis does argue that Nalco's proffered reason was not the actual motivation for his termination. Dikcis relies on several remarks made to him as evidence that Nalco was motivated by Dikcis' alleged, or perceived, disability. Case law on this point is clear: remote, stray remarks, unrelated to the decisional process, are insufficient to demonstrate that Nalco relied on Dikcis' alleged, or perceived, disability in making its adverse employment decision. *See Cowan,* 123 F.3d at 444. This is true even if a decision-maker makes such remarks. *Id.* Dikcis alleges nothing more than a few stray remarks, unrelated to the decision-making process, which do not demonstrate even a perceived disability.

As such, Dikcis cannot meet his burden of showing that Nalco's stated reason for his termination is a pretext for discrimination.

## III. CONCLUSION

For all of the foregoing reasons, the court grants Nalco's Motion for Summary Judgment.

IT IS SO ORDERED.