Raymond DeLUCA, Plaintiff–Appellant,

v.

WINER INDUSTRIES, INC., a Delaware Corporation, Defendant–Appellee.

No. 94–2905.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 11, 1995.

Decided April 24, 1995.

---

Erik D. Gruber, William J. Harte (argued), Harte & Associates, Chicago, IL, for Raymond DeLuca.

Edward W. Feldman (argued), Robert Dickey Hamilton, Miller, Shakman, Hamilton, Kurtzon & Schlifke, Chicago, IL, for Winer Industries, Inc.

Before CUMMINGS and FLAUM, Circuit Judges, and PAINE, District Judge.*

* The Honorable James C. Paine, of the United States District Court for the Southern District of Florida, sitting by designation.

FLAUM, Circuit Judge.

Raymond DeLuca filed suit against Winer Industries, alleging that the company terminated him because of his disability, multiple sclerosis, in violation of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* The district court granted summary judgment for the defendant, holding that De-Luca had failed to establish a *prima facie* case and that the company's reasons for terminating him were pretexts for discrimination. We affirm.

## I.

Raymond DeLuca began representing Winer Industries, Inc., a clothing manufacturer, as an independent salesman in 1990. Pursuant to this arrangement, DeLuca sold children's clothing from Winer Industries' "Gee Whiz" line to the Sears catalog. DeLuca received a 5% commission on his sales and paid for his own business expenses. In 1990, DeLuca sold approximately $444,000, in 1991, approximately $2,043,000, and in 1992, approximately $2,130,000 worth of Winer Industries' children's clothing to the catalog.

In early 1992, DeLuca heard rumors that Sears intended to discontinue its catalog operations. He met with Robert Winer, President and CEO of Winer Industries, Michael Glass, Senior Vice–President of Sales, and Joseph Silvestri, Vice–President of Sales and DeLuca's supervisor, to discuss an alternative arrangement in light of the reports. The men expressed a strong desire to retain DeLuca in the event of the discontinuation of the catalog because of his sales performance over the last several years. As a result, Winer Industries hired DeLuca as a full-time salesperson. It agreed to pay him $80,000 per year plus a 1% or ½% commission, based on the product sold, business expenses, and fringe benefits including health and life insurance. DeLuca accepted new clothing lines and accounts and agreed to stop representing other clothing manufacturers.[1] Win-

er Industries began paying DeLuca his salary on October 1, 1992, and agreed to start commission payments on January 1, 1993.

In November, 1992, DeLuca began experiencing numbness in his face, which he discussed with Silvestri and David Sepler, the "Gee-Whiz" designer. Silvestri later inquired about DeLuca's condition and indicated that he had informed Glass and Winer about it. In December, 1992, DeLuca was diagnosed with multiple sclerosis and his supervisors became aware of the diagnosis. During several different conversations in December, Silvestri told DeLuca he had "to fight it," referred him to another person suffering from the disease, and expressed concern over how his symptoms would affect DeLuca as a salesman. During a business trip to the Chicago office, Glass also asked DeLuca about his condition and medical treatment.

DeLuca was hospitalized for eight days in early January, 1993. Until then he had missed work only for a few medical appointments. The treatment he received successfully relieved DeLuca's symptoms and thereafter he experienced no physical effects of his disease. While hospitalized, DeLuca received a phone call from Silvestri, who stated that Glass and Winer "want to make sure you know you're not covered under hospitalization on this," because the company's insurance plan would not cover DeLuca until May 1, 1993.[2]

As a salesman for Winer Industries DeLuca often had trouble securing samples of merchandise to show to potential customers. The company asserted that such problems were industry- and company-wide and persist even today. DeLuca alleged that his difficulties worsened after his diagnosis and that he received no samples after that date, which constituted the critical sales period for Fall 1993 clothing. DeLuca maintained that Glass refused to give DeLuca samples that

---

1. DeLuca agreed to sell all clothing to the Sears catalog; all women's wear, children's outerwear, and children's NFL merchandise to Sears retail; all clothing to Montgomery Ward; children's wear to K–Mart and Spiegel; and all Harley–Davidson children's wear. DeLuca also had the authority to develop other new customers.

DeLuca relinquished his representation of Eagle Knitting, Pixie Playmates, and the John Fulmer Co.

2. During this time, DeLuca was covered under his wife's insurance policy.

he had bought on a European trip and held at the company's headquarters in New Jersey. DeLuca also asserted that Glass would no longer prod Sepler to provide DeLuca with necessary samples.

Sears officially announced the closing of its catalog operations in January, 1993. On February 19, 1993, Winer Industries terminated DeLuca's employment, citing his failure to close any sales since becoming a full-time salesman on October 1, 1992. Silvestri and Glass, who made the decision to terminate DeLuca, said they believed that he was more comfortable with the Sears catalog and thus had not vigorously pursued other potential clients. As a result, and in light of the discontinuation of the catalog, Silvestri and Glass concluded that DeLuca likely would not produce any sales in the near future. In addition, due to diminished sales and an operating loss in 1992, Winer Industries sought to reduce expenses. Between 1990 and 1993, the company fired eleven salespeople for poor sales performance. By the end of March, 1994, the company had discontinued all of its children's clothing manufacturing and had fired several salespeople connected to that business, dismissing one person three days before it terminated DeLuca. Since firing DeLuca, Winer Industries has not hired anyone to replace him but Silvestri has taken over his remaining accounts.

DeLuca brought suit under the ADA alleging that Winer Industries and Winer, Silvestri, and Glass (the "individual defendants"), as implementors of the company's policies, had created a hostile work environment, made it impossible for him to produce any sales, and eventually terminated him because of his disability. DeLuca also brought claims alleging the intentional infliction of emotional distress and breach of his employment contract, both of which the district court dismissed; DeLuca has not challenged these rulings on appeal.

The district court held that the individual defendants were not personally liable under the ADA and dismissed the claim against them, another decision DeLuca has not appealed. The court then ruled in favor of Winer Industries on its motion for summary judgment. It first held that DeLuca had not introduced sufficient direct evidence that the company had fired him because of his multiple sclerosis. Next, the court held that DeLuca had not made out a *prima facie* case under the *McDonnell–Douglas* burden-shifting method of indirect proof. Specifically, the court held that a genuine issue of material fact existed as to whether DeLuca met the company's legitimate job expectations because it could not determine what those expectations may have been given the obstacles DeLuca had faced. However, because Winer Industries had fired many other employees both before and after terminating DeLuca, and DeLuca had introduced no evidence to the contrary save his own affidavit, which was not based on personal knowledge, the court held that there was no genuine issue of material fact whether the company had treated him less favorably than non-disabled employees. Finally, the court held that even if DeLuca had established a *prima facie* case, Winer Industries had proffered legitimate non-discriminatory reasons for his termination, including its reduction in force and DeLuca's recent poor sales performance, which DeLuca had failed to show were merely pretextual. This appeal followed.

## II.

We review the district court's grant of summary judgment for Winer Industries *de novo, Cliff v. Bd. of School Com'rs of Indianapolis,* 42 F.3d 403, 409 (7th Cir.1994), and review the record, and all reasonable inferences which can be drawn from it, in the light most favorable to DeLuca, the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). Once the moving party has demonstrated that no genuine issue of material fact exists the non-moving party must show, by specific factual allegations, the existence of such an issue. *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues. Accordingly, we will affirm the decision of the district court only if, had the record before that court been the record of a complete trial, the defendant would have been entitled to a directed verdict.

*Robinson v. PPG Industries, Inc.,* 23 F.3d 1159, 1162 (7th Cir.1994) (quoting *Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir.1993)) (citations omitted).

█ The ADA provides:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112. A plaintiff can prove discrimination by either direct or circumstantial evidence that he was fired because of his disability. *See Sarsha,* 3 F.3d at 1038 (claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*). The district court held that DeLuca had not presented sufficient direct evidence of intentional discrimination to raise a genuine issue of material fact. In his opening brief DeLuca did not argue that the district court erred in so finding and in his reply brief he simply stated that he had alleged sufficient facts to prove such conduct. At oral argument, DeLuca's counsel admitted that there was no direct evidence that Winer Industries had fired DeLuca because of his multiple sclerosis. Therefore, the issue is not properly before us.

█ While we have never explicitly held that it applies, other courts have allowed ADA plaintiffs to prove discrimination indirectly by using the *prima facie* case and burden shifting method originally established for Title VII cases in *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *St. Mary's Honor Ctr. v. Hicks,* — U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *See Wilder v. Southeastern Public Service Auth.,* 869 F.Supp. 409, 413 (E.D.Va.1994); *Aucutt v. Six Flags Over Mid–America, Inc.,* 869 F.Supp. 736, 743 (E.D.Mo.1994); *West v. Russell Corp.,* 868 F.Supp. 313, 317 (M.D.Ala.1994); *Braverman v. Penobscot Shoe Co.,* 859 F.Supp. 596, 603 (D.Me.1994). The district court applied the system in this case and the parties did not contest that use. We have borrowed the *McDonnell–Douglas* test for ADEA cases, *see Sarsha,* 3 F.3d at 1038, and assume that we should also analyze ADA cases under that framework.

█ The *prima facie* case requires a plaintiff to prove that (1) he is a member of a protected class;[3] (2) his work performance met the employer's legitimate job expectations; (3) his employment was terminated; and, because Winer Industries was conducting a general reduction-in-force, (4) employees not in the protected class were treated more favorably.[4] *Oxman v. WLS–TV,* 846 F.2d 448, 455 (7th Cir.1988). Once a plaintiff establishes all four elements the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for firing the plaintiff. If the defendant meets this burden, the plaintiff must then prove that the employer's stated reason is merely a pretext for discriminatory action, either "directly with evidence that [the employer] was more likely than not motivated by a discriminatory reason, or indirectly by evidence that the employer's explanation is not credible." *Sarsha,* 3 F.3d at 1039. "[T]he ultimate burden

---

**3.** The protected class under the ADA encompasses "qualified individual[s] with a disability." 42 U.S.C. § 12112. The ADA defines that term as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

**4.** The *McDonnell–Douglas* test was never meant to be applied rigidly and we note that the elements discussed above may change as case law on the ADA is further developed.

of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Hicks,* —— U.S. at ——, 113 S.Ct. at 2747.

■ The parties agreed that DeLuca was a member of the protected class and that his employment was terminated. The district court held that a genuine issue of material fact existed whether DeLuca was meeting Winer Industries' legitimate job expectations. While he had made no sales in the four and one-half months since becoming a full-time employee, from the record before us we cannot determine what Winer Industries expected of DeLuca in that time period when dealing predominantly with new lines and customers. While a salesman must sell the employer's products, and the parties allegedly discussed their expectations for DeLuca's first-year sales, Winer Industries did not set any requirements he had to meet in his first four months. Winer Industries also did not present any evidence regarding how long it normally takes for sales-people to develop new lines and customer relationships. DeLuca alleges that he received very few of the samples (and none after his diagnosis) he needed to produce sales so that little could have been expected of him. Finally, although DeLuca officially lost his largest customer and the only one to whom he had previously sold, Winer Industries had anticipated this loss, and DeLuca asserts that the company also must have anticipated his consequently lower sales during that time period. The lack of evidence about the company's expectations and the obstacles DeLuca faced lead us to conclude that a genuine issue of fact exists regarding whether DeLuca met the company's legitimate job expectations.

■ The final element of DeLuca's *prima facie* case requires proof that Winer Industries treated him less favorably than non-disabled employees. The district court held that the company had not done so, relying on the fact that since 1990 Winer Industries had fired many salespeople and other employees, none of whom were disabled.[5] The company considered all of these salespeople unproductive and Deluca does not contend that we should not compare him to them simply because he may have been meeting Winer Industries' expectations. Instead, DeLuca argues that we must step back and recognize that Winer Industries treated him less favorably by failing to provide him with any product samples, thereby making it impossible for him to effect any sales. DeLuca, however, did not present any evidence either showing that certain salespeople did receive samples during the relevant time period or that other salespeople had not endured the same difficulties prior to their terminations. He could have presented this evidence through his own testimony or affidavit, if based on personal knowledge, through answers to deposition questions posed to Silvestri or Glass, or through affidavits of other salespeople. Instead, DeLuca's affidavit focused solely on his own problems; regarding other salespeople, DeLuca testified only that he had never heard Sandy Sepler, another children's clothing salesman, complain about any sample problems, that Silvestri had encountered difficulties obtaining samples, and that DeLuca did not know what kind of sample support the Dallas sales office received. A party "is entitled only to *reasonable* or *justifiable* inferences when confronted with a motion for summary judgment." *Rand v. CF Industries, Inc.,* 42 F.3d 1139, 1146 (7th Cir.1994). Reading the evidence before us in the light most favorable to DeLuca, we still cannot reasonably infer that he was treated less favorably than non-disabled salespeople.

■ DeLuca's failure to establish a *prima facie* case makes it unnecessary for us to discuss Winer Industries' reasons for terminating him or the issue of pretext. Contrary to DeLuca's assertion, he cannot defeat a motion for summary judgment simply by raising a genuine issue of fact as to one element of the *prima facie* case. Rather, he must establish all four elements, or create a genuine issue with regard to them, *see Hong v. Children's Memorial Hosp.,* 993 F.2d 1257 (7th Cir.1993), *cert. denied,* —— U.S. ——,

---

**5.** DeLuca asserts in his affidavit that Winer Industries terminated several salespeople for reasons other than low sales figures. Because he failed to explain his basis of personal knowledge of these events, however, we do not consider his descriptions of them. *See* Fed.R.Civ.P. 56(e).

114 S.Ct. 1372, 128 L.Ed.2d 48 (1994), a burden which DeLuca has not met.

For the foregoing reasons, we affirm the decision of the district court.

AFFIRMED.