John Q. NELSON, Plaintiff,

v.

FINISHES UNLIMITED, INC., an Illinois corporation; Henry Godshalk; Z.M. Godshalk; and Various John Does and Jane Does, Defendants.

No. 96 C 4843.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 31, 1997.

David Mark Bagdade, Carey M. Stein, Ashman & Stein, Chicago, IL, for Plaintiff.

Alfred Y. Kirkland, Jr., Marios Nicholas Karayannis, Jane Ellen Craddock, Fred J. Beer, Brady & Jensen, Elgin, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiff, John Q. Nelson, filed a complaint against the defendants, Finishes Unlimited, Inc. ("Finishes"), *et al.*, alleging violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). Mr. Nelson also invoked this court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over his claims for violations of the Illinois Workers' Compensation Act, 820 Ill. Comp. Stat. 305/1 *et seq.*, and of the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 *et seq.* The defendants seek summary judgment pursuant to Federal Rule of Civil Procedure 56 as to all of Mr. Nelson's claims. For the reasons set forth below, the defendants' motion is granted.

### Background

The undisputed facts are as follows.[1] Mr. Nelson was hired by Finishes on May 31, 1994 as a batch operator. Over the next seven months, Mr. Nelson received two pay

---

1. Mr. Nelson disputes some of these facts, but presents no evidence whereby a jury could reach a contrary decision. Either he merely states that he disputes the facts, or states that only part of the facts are undisputed, or he points to deposition testimony that does not support his contentions. Thus, there is really no dispute as to the facts as presented.

increases and a promotion from batch operator to mill room operator.

On January 26, 1995, Mr. Nelson suffered a work-related injury to his right elbow and shoulder. He visited his personal physician, Dr. David Lucks, and was told that he could continue to work but should not lift over 20 pounds for three weeks. Mr. Nelson informed Finishes on January 30, 1995 of the restriction by giving Dan Powers, Mr. Nelson's team leader, Dr. Lucks' prescription/restriction note. Mr. Powers told Mr. Nelson to follow the restriction and that if he needed to lift something over 20 pounds, Finishes would accommodate him and provide someone to lift it for him.

On February 2, 1995, while Mr. Nelson was unloading the #2 mill, he spilled eight gallons of paint in the production area of the mill. Mr. Nelson received an unsatisfactory work report/disciplinary report regarding this incident two days later.

Also on February 2, 1995, in the late afternoon or early evening, Mr. Nelson loaded the #1 mill and let it run overnight. Mr. Nelson recalls setting a pump meter which pumped a resin liquid vehicle agent in the #1 mill, but he did not check the resin pump meter before he left that evening.

On the morning of February 3, 1995, Jeff Schaibley, the acting mill room operator, observed dry powder on the floor near the #1 mill, noticed that the mill was extremely hot, and discovered that the contents of the mill were caked to the side of the mill and not in a thick liquid form, as they should have been if the mill was properly filled and mixed overnight.

Mr. Schaibley reported the situation to Mark Olson, Mr. Nelson's supervisor. Mr. Olson concluded that Mr. Nelson had not put enough resin in the grind portion of the mill. On February 6, 1995, Mr. Nelson received another unsatisfactory work report/first warning notice for improperly loading the #1 mill.

Mr. Nelson was informed of the #1 mill condition when he returned to work and officially responded to the two reports on February 13, 1995. He claimed that he was being harassed and that his locker had vulgar graffiti on it that was directed at him. Jerri Cooper, the human resources coordinator, informed Mr. Nelson that Finishes would not condone harassment, that the graffiti would be removed, but that he still needed to prepare a direct response to the unsatisfactory work reports.

On February 15, 1995, Mr. Nelson provided Finishes with his supplemental response to the unsatisfactory work reports. Mr. Nelson admitted improperly loading the #2 mill when he spilled the paint, but denied that he had improperly loaded the #1 mill. Ms. Cooper and Mr. Olson presented Mr. Nelson's response and detailed Mr. Olson's investigation to Zoe Godshalk, the vice president of the company, on February 19, 1995. Based on the information presented to Ms. Godshalk, she concluded that Mr. Nelson was being dishonest when he denied that he improperly loaded the #1 mill and decided to terminate Mr. Nelson for dishonesty. The decision to terminate Mr. Nelson was made solely by Ms. Godshalk. She instructed Mr. Olson to terminate Mr. Nelson. At that time, Ms. Godshalk did know that Mr. Nelson had an injury that precluded him from lifting items over 20 pounds.

On February 20, 1995, Mr. Olson informed Mr. Nelson that Finishes was terminating his employment because he was dishonest when he denied improperly loading the #1 mill.

### Summary Judgment

#### A. The ADA Claim

Disability discrimination under the ADA may be proved indirectly through the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), burden shifting method originally established for Title VII cases.[2] *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 797 (7th Cir.1995). First, the plaintiff must state a *prima facie* case of ADA discrimination. If the plaintiff succeeds, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for firing the plaintiff. If the defendant meets this burden, the burden

---

**2.** Mr. Nelson did not argue that there was direct evidence of disability discrimination.

shifts back to the plaintiff to prove that the employer's stated reason is merely a pretext for discriminatory action. *Id.*

■ Finishes concedes that for purposes of summary judgment, Mr. Nelson has established his *prima facie* case. Finishes has articulated a legitimate, non-discriminatory reason for terminating Mr. Nelson. Finishes claims that Mr. Nelson was discharged for lying to management. Therefore, I will only address the last step of the *McDonnell Douglas* test.

The burden has shifted back to Mr. Nelson to prove that Finishes' non-discriminatory explanation is pretextual. Mr. Nelson can satisfy his burden by showing "either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *La Montagne v. American Convenience Prods. Inc.*, 750 F.2d 1405, 1409 (7th Cir. 1984) (emphasis omitted).

Mr. Nelson points to several facts as proof of illegitimate motive. First, he claims that in the seven months from his hiring to his injury, he was promoted, received two pay increases, and was never disciplined. However, "to show pretext, it does not help for [Mr. Nelson] to repeat the proof that his job performance was generally satisfactory.... The Company advanced specific reasons for his discharge, and his rebuttal evidence should be focused on them." *Aungst v. Westinghouse Elec. Corp.*, 937 F.2d 1216, 1223 (7th Cir.1991). Thus, Mr. Nelson's satisfactory performance does not create an issue of material fact as to pretext. *See, e.g., id.* (evidence that plaintiff received a merit pay increase and a letter of recommendation shortly before his discharge was irrelevant to proving pretext where it did not respond to the employer's reasons for terminating him); *La Montagne*, 750 F.2d at 1414 (evidence that plaintiff received regular salary increases and a recent bonus, along with a letter from one of the employer's directors stating that plaintiff's prospects were good were irrelevant to prove that the proffered reason for his firing was pretextual).

Mr. Nelson claims that the ostensible reason for firing him was that he spilled paint, but that another employee who had caused a much larger spill was not disciplined. There is no evidence, other than Mr. Nelson's statement, that another employee spilled paint and was not disciplined. Mr. Nelson has not identified the other employee. Furthermore, this argument does not address Finishes' statement of its reason for terminating him: that he lied to management about his mistake in filling the #1 mill on February 2, 1995.

Mr. Nelson claims that his locker was vandalized and had vulgar graffiti on it directed at him. Presumably, if those responsible for his termination were the ones who vandalized his locker, a reasonable juror could infer that the termination decision was pretextual. However, Mr. Nelson does not claim that any of the persons who were responsible for the decision to discharge him were also responsible for the graffiti. Mr. Nelson claims that Dan Powers and Dale Woodworth harassed him, but neither of these two men were involved in the circumstances surrounding his termination.[3]

Finally, Mr. Nelson claims that he was never told that he was terminated for making false statements. In fact at his deposition, Mr. Nelson testified that he could not remember what reason was given. Mr. Olson testified that he did tell Mr. Nelson that he was being terminated for being dishonest about improperly filling the #1 mill. He also states that Ms. Cooper, the human resources coordinator, did not tell him he had been fired because of his alleged false statements and stated only that he was fired "based on what [he] had done in the past." That, however, is consistent with the given reason. Finally, Mr. Nelson presents Hank Godshalk's statement that Mr. Nelson "wasn't going to work out" and that there was "nothing to talk about." This evidence also does not prove pretext for although Mr. Godshalk is president of the company, there is no evidence that he knew of the exact

---

3. The persons involved were Mr. Schaibley, who found the mill in its poor condition, Mr. Olson, Mr. Nelson's supervisor, Ms. Cooper, the human resources coordinator, and Ms. Godshalk, the vice president of Finishes, who made the decision to terminate Mr. Nelson's employment.

reason or was involved in the decision to fire Mr. Nelson. In addition, his statement is not inconsistent with a decision to terminate Mr. Nelson because he lied.

All of the above evidence does not raise the inference that Ms. Godshalk's decision to terminate Mr. Nelson was pretextual. Summary judgment is therefore granted on Count I of Mr. Nelson's complaint.

### B. Supplemental State Claims

 "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir.1994). Only in unusual circumstances, such as a statute of limitations problem, should a federal court retain jurisdiction over the state law claims. *Id.*

In this case, because I have ruled in favor of Finishes on Mr. Nelson's ADA claim, there is no longer a federal question pending before this court. Since no unusual circumstances were presented, Mr. Nelson's state law claims are dismissed.

### Conclusion

For the foregoing reasons, defendants' motion for summary judgment as to Count I of Mr. Nelson's complaint is granted. All of the remaining state law claims in Counts II through VI are dismissed for lack of jurisdiction.