John E. VARGA, Plaintiff,

v.

**CLARK FOODSERVICE OF INDIANA, Defendant.**

No. 3:01CV0860AS.

United States District Court,
N.D. Indiana,
South Bend Division.

Jan. 15, 2003.

Donald E. Wertheimer, South Bend, IN, for plaintiff.

Dana S. Connell, Margaret, Parnell, Hogan, Chicago, IL, for defendant.

### MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This cause is before the Court on Defendant's motion for summary judgment, pursuant to Fed.R.Civ.P. 56, on Plaintiff's Complaint brought pursuant to the Americans With Disabilities Act ("ADA"), 42 U.S.C.A. §§ 12101, *et seq.* Oral argument was heard on this matter in South Bend, Indiana, on January 11, 2003.

### I. JURISDICTION

The Court has Federal Question jurisdiction over this case pursuant to 28 U.S.C. § 1331.

### II. RELEVANT FACTS

Defendant is a food service distributor whose distribution center and offices are located in South Bend, Indiana. Plaintiff was hired by Defendant as a Night Shift Clerk in August, 2000. This position required that Plaintiff sort and organize tags and truck forms for outgoing delivery

trucks and to deliver truck sheets to Defendant's computer room after the trucks were loaded for further processing. Plaintiff does not dispute that Defendant's sales would suffer if the delivery trucks were delayed in leaving the distribution center, thus requiring quick and accurate execution of Plaintiff's job duties was required.

Plaintiff started receiving Social Security Disability Insurance ("SSDI") payments after sustaining an incomplete compression fracture at his right third lumbar vertebrae (L–3), causing partial paralysis to the right, lower extremity, following a motorcycle accident in 1983. Plaintiff also sustained a closed-head injury which caused him to lose his sense of smell. He was found to be permanently disabled by the Social Security Administration ("SSA"),[1] although Plaintiff worked in a variety of part-time positions with various employers in the years following the accident. Plaintiff stated that, until he started working for Defendant, he had avoided full-time employment so he would not jeopardize his eligibility for Social Security payments.

The facts show that, from 1993 to 1997, Plaintiff's job duties included driving a taxi cab and ice cream truck. Presently, Plaintiff is unable to operate motor vehicles, not due to any physical condition, but because his driver's license has been revoked following multiple convictions for driving under the influence ("DUI"). Plaintiff testified that he swims, lifts weights (free weights and machines) since 1986. Not only has he been able to live unassisted since 1986, but he has assumed a care-taking role for his parents, providing assistance with household chores, including mowing the lawns at his parents' house and a neighbor's house using a stand-up lawn mower.

When Plaintiff applied for a job with Defendant, he indicated that he could lift up to fifty pounds and perform manual labor tasks. He has testified that he is able to sit for approximately two hours and can walk distances up to one mile. Plaintiff uses a cane to walk and was using a cane when he was interviewed by Defendant for his job.

Defendant commenced Plaintiff's employment with a period of probation, which Plaintiff agreed was consistent with Defendant's treatment of other newly-hired employees. Plaintiff's probationary period extended until October 12, 2000. Although a considerable amount of standing and walking was required for Plaintiff's position, he requested, and was accommodated with, a stool to use while he performed his duties. Plaintiff was permitted to bring in a cushion for the stool for his added comfort. Plaintiff admitted that the stool alleviated any problems he might have encountered while working. He also admitted that he had not requested any other accommodation from Defendant.[2] However, Plaintiff's coworkers assisted him in the completion of his duties. Despite these accommodations, Plaintiff was unable to execute his duties in a satisfactory manner and was terminated due to poor performance prior to the completion of his probationary period.[3]

---

1. Plaintiff claims that he never represented to the SSA that he was permanently and totally disabled, despite the SSA's award of benefits pursuant to his disability. Plaintiff's representations to the SSA cannot be examined by the Court because Plaintiff destroyed the documents relevant to this determination in January, 2002, which Defendant points out was one month after he filed the present lawsuit.

2. Plaintiff requested that his work station be moved closer to the computer room, however, Defendant had made a prior determination to relocate the work station from the northeast side of the warehouse to the northwest portion of the warehouse to increase its employees' efficiency. For this reason, Defendant denied Plaintiff's request.

3. Plaintiff admitted he was able to locate alternative employment as a telemarketer fol-

Plaintiff does not dispute that Defendant has terminated other newly hired employees during their probationary periods. Further, he admitted that he had difficulty becoming accustomed to working an eight-hour day. He also admitted that he had made mistakes in working with the loading tickets. Despite these admissions, Plaintiff claims that Defendant terminated him because of his disability in violation of the ADA.

## III. STANDARD OF REVIEW— SUMMARY JUDGMENT

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Russo v. Health, Welfare & Pension Fund, Local 705*, 984 F.2d 762 (7th Cir.1993). A thorough discussion of Rule 56 can be found in a trilogy of cases decided in 1986 by the Supreme Court of the United States.[4] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56). A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings, *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920–21 (7th Cir.1994); *Hughes v. Joliet Correctional Ctr.*, 931 F.2d 425, 428 (7th Cir.1991), nor may that party rely upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir.1992).

During its summary judgment analysis, the Court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Smith v. Fruin*, 28 F.3d 646, 650 (7th Cir.1994), *cert. denied*, 513 U.S. 1083, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995); *Brennan v. Daley*, 929 F.2d 346, 348 (7th Cir. 1991), *reh'g denied*, 1993 WL 518446. Furthermore, it is required to analyze summary judgment motions under the

---

lowing his termination from Defendant. He stated that there are a number of jobs that he is able to perform.

**4.** The 1986 Supreme Court trilogy was later reexamined in *Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), a case born in the context of antitrust law. The most that can

be said for *Eastman Kodak*, however, is that it did not tinker with *Celotex* and *Anderson*, and possibly involves an attempt to clarify *Matsushita*. This view is well-supported by an in-depth academic analysis in Schwarzer, Hirsch, and Barrans, *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441 (1992).

standard of proof relevant to the case or issue. *Anderson,* 477 U.S. at 252–55, 106 S.Ct. 2505.

For a terminated employee to survive summary judgment in an ADA action, he must present sufficient evidence from which a rational trier of fact could reasonably infer that the employer fired the employee because the employee was a member of a protected class. *Robin v. Espo Engineering Corp.,* 200 F.3d 1081, 1090 (7th Cir.2000).

### IV. ANALYSIS

 Plaintiff claims he suffered an adverse employment decision by Defendant because of his disability. Borrowing from Title VII employment discrimination cases, the *McDonnell Douglas*[5] burden-shifting analysis is applicable when a Plaintiff claims he was treated differently because of his disability. *See DeLuca v. Winer Indus., Inc.,* 53 F.3d 793, 797 (7th Cir.1995). To qualify as disabled (under the ADA), a claimant must initially prove that he has a physical or mental impairment that imposes a substantial limitation on a major life activity. *Toyota Motor Mfg. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 689, 151 L.Ed.2d 615 (2002). To state a claim under the ADA, Plaintiff must prove that he is an individual with a disability; that he can, with or without reasonable accommodation, perform the essential functions of the employment position; that he suffered an adverse employment decision; and that he suffered this decision because of his disability. *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987); *Weixel v. Board of Educ. of City of New York,* 287 F.3d 138 (2nd Cir. 2002).

 The Supreme Court, in interpreting the ADA and subsequent regulations pertaining thereto, has held, "To be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must be permanent or long-term." *Williams,* 122 S.Ct. at 690; *see also Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 2202, 141 L.Ed.2d 540 (1998). Regulations have defined "major life activity to include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The inability to perform a single, particular job does not constitute a substantial limitation on the major life activity of working. 29 C.F.R. § 1630.2(j)(3)(i). The Court must consider any mitigating measures that Plaintiff uses in determining whether an impairment substantially limits one or more major life activity. *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999).

**Plaintiff did not have an impairment that substantially limited the major life activities of working or walking.**

 Plaintiff must show that his physical impairment imposes a substantial burden on a major life activity. The relevant "major life activities" in this case are working and walking. As to the inquiry into working, the Court finds that Plaintiff is not substantially impaired. In the Seventh Circuit, an inability to perform a particular job for a particular employer is not sufficient to establish a substantial limitation on the ability to work, for purposes of being qualified as disabled under the ADA;

---

**5.** *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

rather, the impairment must substantially limit employment generally. *Heimann v. Roadway Express, Inc.,* 228 F.Supp.2d 886, 901 (N.D.Ill.2002). 'Substantially limits' indicates significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared the average person having comparable training, skills, and abilities. *Id.* The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working for ADA purposes. *Id.* Here the determination is simple. Plaintiff had maintained employment which included operating motor vehicles and office work in the years prior to his employment with Defendant. In addition, Plaintiff admitted in his deposition that there are a number of jobs that he is able to perform. In this regard, Plaintiff's own statements and work history show that Plaintiff is not significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared the average person having comparable training, skills, and abilities. *Id.*

■ With regard to his ability to walk, the Court finds that Plaintiff has not met his initial burden of production that the permanent effects of the L–3 incomplete compression fracture impose a substantial burden on a major life activity. Plaintiff testified to his ability to mow grass while walking behind and pushing a lawn mower. He testified further that he was able to walk distances up to one mile. In addition, he testified that Defendant's provision of a stool at his workstation accommodated any problems he encountered while working. Again, Plaintiff's personal history, predating his employment with Defendant, and his own sworn testimony, demonstrate that his physical impairment did not impose a substantial burden on his ability to walk. In this regard, Plaintiff is not "disabled" for purposes of the ADA.

**Plaintiff was not qualified to perform the essential functions of the position with or without a reasonable accommodation.**

■ Even with accommodations by the Defendant and the assistance of coworkers, Plaintiff was unable to perform the essential functions of his job at a level that the Defendant required. Plaintiff admitted he had difficulty adjusting to an eight-hour work day and that he made errors in the execution of his duties. In addition, Defendant's dissatisfaction with Plaintiff's work appears to have centered on the quality of the output of his work (i.e., Plaintiff admitted he "messed up" truck forms), rather than his mobility throughout the warehouse to execute his job functions (which goes to Plaintiff's claim that his physical impairment substantially limited his ability to walk.) In other words, it does not appear that the quality of Plaintiff's work would have been improved had he not sustained an L–3 incomplete compression fracture. Plaintiff has not raised a genuine issue of material fact that he was able to perform the essential functions of the job, despite Defendant's accommodation.

**Plaintiff has not addressed the apparent conflict between his qualification for disability benefits under the Social Security Disability Insurance program and his alleged status as a qualified person with a disability under the ADA.**

The Supreme Court, quoting the applicable statutory provision of the Social Security Act noted,

The Social Security Disability Insurance (SSDI) program provides benefits to a person with a disability so severe that he is "unable to do (his) previous work" and "cannot engage in any other kind of

substantial gainful work which exists in the national economy."

*Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 797, 119 S.Ct. 1597, 1599, 143 L.Ed.2d 966 (1999), *citing* 42 U.S.C. § 423(d)(2)(A). The Court noted that the purpose of the SSA was to provide monetary benefits to every insured individual who "is under a disability". 42 U.S.C. § 423(a)(1).[6] On the other hand, the Court in *Cleveland* stated that the purpose of the ADA is to rid the workplace of discrimination against disabled individuals (*see* 42 U.S.C. §§ 12101(a)(8), (9)). As set forth, *supra*, to qualify for status under the ADA, a claimant must be a qualified individual with a disability, or a disabled person who can perform the essential functions of her job, with or without reasonable accommodation. *See* 42 U.S.C. § 12111(8).

▆▆▆ In the present case, Plaintiff is faced with the same situation as was Ms. Cleveland: How to explain the apparent contradiction between the entitlement to SSDI benefits and, at the same time, pose a bona fide claim as a qualified individual with a disability under the ADA. In *Cleveland*, the Court held that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim, but most proffer a sufficient explanation. *Cleveland*, 526 U.S. at 805, 119 S.Ct. at 1603. Shortly after the *Cleveland* decision, the Seventh Circuit further clarified the ADA plaintiff's pleading requirements:

A plaintiff cannot avoid summary judgment merely by asserting that she is a qualified individual if she made prior statements, in applying for SSDI, regarding her disability that are squarely contradictory. A plaintiff may declare that she was totally disabled in her SSDI application, then declare that she was a qualified individual under the ADA, but she must show that this apparent inconsistency can be resolved with reference to the variance between the definitions of "disability" under the ADA and SSDI.

*Feldman v. American Memorial Life Ins. Co.*, 196 F.3d 783, 789 (7th Cir.1999). Therefore, it was Plaintiff's burden to proffer a sufficient explanation of his qualification for SSDI benefits while he sought status as a "qualified individual with a disability" for ADA purposes.

The relevant portion of Plaintiff's "Statement of Genuine Issues" in his Response opposing the Motion for summary judgment reads,

Varga applied for Social Security Disability in 1984 while he was in the hospital. Varga never represented to the Social Security Administration that he was totally disabled or unable to work. Instead, Varga listed his injuries and limitations. Varga has been through two or three reviews with the SSA. Much of Varga's documentation regarding his Social Security correspondence and tax returns was lost or discarded when Varga last moved in January of 2002.

The Court finds that this proffered explanation is insufficient to explain the inherent conflict between the finding of total disability in order to receive SSDI benefits, while maintaining his position that he is a qualified individual with a disability. The Court finds disingenuous Plaintiff's claim that he "never represented that he was totally disabled or unable to work." Rather, it is persuasive that, for a period of nineteen years, which included several

---

6. The SSA defines "disability" as:

"an inability to engage in any substantial gainful activity by reason of any physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

interviews for benefits, Plaintiff's qualification for SSDI benefits have been upheld.[7] Plaintiff admitted that he has been careful not to take employment where his earnings would jeopardize his receipt of SSDI benefits. The Court will not question the SSA's application of the statutory guidelines it uses to determine an individual's qualification for benefits in this case. Despite Plaintiff's denials, it is apparent that Plaintiff must have provided sufficient evidence of disability to qualify for SSDI benefits and to maintain this qualification. In this regard, according to *Cleveland* and *Feldman*, it was incumbent on Plaintiff to address the SSDI–ADA inconsistency with an explanation that consisted of more than the unsubstantiated, self-serving statements contained in his "Statement of Genuine Issues" in his Response.

### Pretext was not established.

To state a prima facie case, Plaintiff must establish that he is disabled under the meaning of the ADA, that he is qualified to perform the essential functions of his job with our without reasonable accommodation, and that he was terminated because of his disability. *Pugh v. City of Attica*, 259 F.3d 619, 626 (7th Cir.2001). Even if the Court were to assume that Plaintiff was disabled, for purposes of the ADA, that he was qualified to perform the essential functions of his job, and that he had adequately alleged discriminatory termination, Defendant has met its burden of providing a legitimate, non-discriminatory reason for terminating Plaintiff. *Id.* Defendant argues that it terminated Plaintiff for poor performance during his probationary period. Defendant offers undisputed facts that it has terminated many of its employees during their probationary periods for the same reason. Moreover, Plaintiff admits Defendant's motive for terminating him was non-discriminatory: There was another candidate that Defendant wished to hire because of a friendship. Plaintiff might have disliked Defendant's decision to terminate him and its supporting reasons, but this does not rise to the level of discrimination that is forbidden by the ADA. Moreover, Plaintiff has not demonstrated that Defendant's proffered reason was pretextual for intentional discrimination.[8] Therefore, even when the facts are viewed in the light most favorable to Plaintiff, there is no genuine issue of material fact regarding Defendant's motive for terminating Plaintiff.

## V. CONCLUSION

Even when viewed in the light most favorable to Plaintiff, there are no issues of material fact in dispute. Based upon the foregoing analysis, Defendant's motion for summary judgment will be GRANTED. This case is now DISMISSED. Each party will bear its own costs. **IT IS SO ORDERED.**

---

7. The Court is aware that in 1993 or 1994, Plaintiff's SSDI benefits lapsed temporarily because Plaintiff earned more income than the allowable amount under the SSA. His benefits lapsed again in 1998 when he was jailed following his third DUI conviction.

8. Plaintiff is required to prove, by a preponderance of evidence, that Defendant's proffered explanation is unworthy of credence. *Pugh*, 259 F.3d at 626, *citing Reeves v, Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).