**Dennis BRENNAN, Plaintiff–Appellant,**

v.

**CITY OF CHICAGO, Defendant–Appellee.**

No. 03–3109.

United States Court of Appeals, Seventh Circuit.

Argued April 20, 2004.

Decided April 28, 2004.

Rene Hernandez, Rockford, IL, for Plaintiff–Appellant.

Kerrie Maloney Laytin, Office of the Corporation Counsel, Chicago, IL, for Defendant–Appellee.

Before EASTERBROOK, EVANS, and WILLIAMS, Circuit Judges.

ORDER

Dennis Brennan sued the City of Chicago under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, alleging that the City terminated his at-will employment because of his heart condition. The district court granted summary judgment for the City. We affirm.

From 1993 until 2001, Brennan worked for the City as a truck driver in the Department of Aviation at O'Hare Airport. Brennan has suffered three heart attacks—one prior to his employment with the City, one in 1996, and one in 1997. After Brennan's last heart attack, his doctor advised him to "honor his body" and "respect what his body told him," but also wrote a medical note clearing him to return to work "without restriction."

On July 19, 2001, Brennan was working at O'Hare under the supervision of two "motor truck driver foremen," Nick LaMonica and Wayne Kowalski. He was also working with a "laborer foreman," Angel Marrero. During his shift, Brennan asked Marrero if he could leave the airport to get food in order to take his heart medication, and Marrero gave him permission to leave. While Brennan was away from the airfield, he received a radio call to return and report to his foreman. Brennan returned to the airport and reported to Kowalski, who wrote up an incident report criticizing Brennan for failing to get permission from either of the motor truck driver foremen before leaving.

According to the City, all drivers are required to report to a motor truck driver foreman before leaving the airfield. Although Brennan contests that this policy existed—or if it existed that it was enforced—he admits that LaMonica had admonished him prior to the July 2001 incident for leaving the airfield without obtaining permission from a "foreman." In unrelated incidents, supervisors had twice before disciplined Brennan for "being disruptive" at a drug treatment facility while participating in the City's random drug-testing program. After completing an investigation and holding a hearing relating to Kowlaski's incident report of July 19, 2001, the City fired Brennan. He subsequently filed an EEOC claim and, after receiving a right to sue letter, brought this suit.

The district court granted summary judgment to the City solely on the ground that Brennan had not provided evidence "from which a trier of fact could find that similarly situated employees were treated differently." We review a grant of summary judgment *de novo*, viewing the record in the light most favorable to the nonmoving party. *Amadio v. Ford Motor Co.*, 238 F.3d 919, 924 (7th Cir.2001).

Brennan conceded that he did not have evidence to prove under the direct method that the City discriminated against him, and accordingly sought to prove discrimination by using the indirect burden-shift-

ing method established in *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See DeLuca v. Winer Indus.,* 53 F.3d 793, 797 (7th Cir.1995) (applying the *McDonnell–Douglas* method to ADA cases). To prevail under the indirect method, an ADA plaintiff must first establish a *prima facie* case by proving that (1) he is disabled, (2) he was performing his job satisfactorily, (3) he was subjected to an adverse employment action, and (4) similarly situated employees without a disability received more favorable treatment. *Amadio,* 238 F.3d at 924. If the plaintiff overcomes that hurdle, the burden of proof shifts to the defendant to articulate a legitimate, non-discriminatory reason for the action. *Id.* If the defendant meets this burden, the plaintiff must then prove that the stated reason is merely a pretext for discriminatory action. *Id.*

Brennan argues that the district court should not have granted summary judgment because, he asserts, he presented sufficient evidence that similarly situated, non-disabled employees left the airfield without following protocol and were not subsequently disciplined. Although Brennan admits that he does not have personal knowledge of different treatment, he argues that deposition testimony from foreman Kowalski supports his contention that other employees received more favorable treatment. Kowlaski testified that he was "sure" that other drivers had left for breaks without following protocol, and also conceded that he could not remember ever being personally involved in disciplining a driver for leaving the airfield for a break.

But to establish the similarly situated prong of the *prima facie* case, a plaintiff must "show[ ] that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly–Clark Corp.,* 219 F.3d 612, 617–18 (7th Cir.2000); *see also Steinhauer v. DeGolier,* 359 F.3d 481, 484–85 (7th Cir.2004) (holding that Title VII plaintiff and other employee were not similarly situated because plaintiff was on probation and other employee was not). Here, Brennan has not mentioned any specific employee, let alone described an employee who was in a similar employment situation and had a similar disciplinary history. Kowalski's deposition testimony merely states his subjective belief that other employees had probably left the airfield without permission, and then explains that he not been personally involved in firing someone for leaving the airfield. This testimony, even viewed in the light most favorable to Brennan, is neither specific nor conclusive enough to support an inference that Brennan was treated less favorably than a non-disabled employee in the same employment situation. *See DeLuca,* 53 F.3d at 798. Because Kowalski's testimony was Brennan's only evidence, the district court correctly granted summary judgment to the City on this ground.

AFFIRMED.