165 F.3d 32
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Frank P. PAVONE, Plaintiff-Appellant,
v.
Jesse BROWN, Secretary, Department of Veterans Affairs,
Defendant-Appellee.
 No. 97-3200.
 United States Court of Appeals, Seventh Circuit.
 Argued May 20, 1998.
Decided Nov. 25, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 95 C 3620. Joan B. Gottschall, Judge.
 Before Honorable WALTER J. CUMMINGS, Honorable DANIEL A. MANION, Honorable ILANA DIAMOND ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Frank Pavone, a decorated Vietnam veteran, was treated deplorably by his employer, the Hines Veterans Administration Hospital Mr Pavone suffers from post-traumatic stress disorder ("PTSD"), brought on by his experiences in Vietnam, and non-Hodgkin's lymphoma, a form of cancer which he believes was caused by his exposure to Agent Orange in Vietnam. He sued Hines, where he was employed in the housekeeping department, for discriminating against him on the basis of disability and race. After a bench trial, the district court determined that the supervisors at Hines treated all of their employees badly, and that Mr. Pavone had failed to show he was singled out for harassment because of his race or disability. The district court entered judgment in favor of Hines, and we must affirm.
 
 I.
 
 2
 We give great deference to the district court's findings of fact following a bench trial, and so we will summarize the facts as the district court reported them. See Pavone v. Brown, 1997 WL 441312 (N.D.Ill. July 29, 1997). Mr. Pavone saw active duty in Vietnam from 1964 through 1967, and served in the reserves from 1967 through 1970. In the course of his active duty. Mr. Pavone saw many of his fellow Marines and many civilians killed. At the end of his service, Mr. Pavone received an honorable discharge, and went to work for Borg-Warner Corporation. As he worked his way up through the ranks there, he gained experience supervising other employees After sixteen years, Mr. Pavone was laid off. Following the lay-off and a brief stint as a salesman, he applied for a job at Hines, where he had previously been treated for PTSD. He accepted a janitorial position at Hines, the only position available, because he was interested in working with veterans, and Hines reassured him that he would have opportunities to work his way up the ranks.
 
 
 3
 Most of Mr. Pavone's supervisors at Hines were African-American, as were the vast majority of his fellow housekeeping staff. Mr. Pavone is Caucasian. For the first several years of his employment at Hines, he received successful performance reviews from his supervisors. That situation changed when he began to work for Robert East, who is African-American. Mr East filed a number of "letters of inquiry" against Mr. Pavone, written charges to which employees were required to respond. Mr. Pavone testified that East scrutinized his work and harassed him, and other employees confirmed that East's scrutiny of Mr. Pavone was excessive and harassing. In July 1989, Pavone, along with 34 other employees, many of whom were African-American, signed a petition to Senator Paul Simon, complaining about their treatment at the hands of Hines' supervisors The employees claimed Hines' supervisors harassed them, verbally threatened them, and showed very little respect for them They further complained that this treatment added a great deal of unnecessary stress to their jobs Around this same time. Mr. Pavone was diagnosed with non-Hodgkins lymphoma
 
 
 4
 In October 1989, Mr. Pavone filed an EEO class-action complaint on behalf of 25 employees, against a number of supervisors, including James Elium, Walter Moss, Lovie Gantt, Martin Anderson. Warren Irby and East, charging handicap discrimination. After the class allegations were dismissed, Mr Pavone elected to proceed with his claims in an individual action. Subsequently, a group of housekeeping employees, including Mr. Pavone, sent a petition to Hines management complaining about supervisor Robert East The employees, many of whom were African-American, complained of the same mistreatment at East's hands that Mr. Pavone charged in this suit But Mr. Pavone had unique problems with East as well. For example, in late 1989, he suffered a severe PTSD flashback as he was working in the spinal cord ward. After taking the rest of the day off as a sick day, Mr Pavone returned to work the next day only to be assigned the same duty by East, even though East knew that conditions in the spinal cord ward were causing PTSD problems for Mr. Pavone Supervisor Warren Irby also triggered PTSD incidents in Mr. Pavone, unduly criticizing his work and then following him when Mr. Pavone tried to walk away, continuing to taunt and harass him until Mr Pavone locked himself in a bathroom. On a number of occasions. Irby ridiculed Vietnam veterans, telling Mr. Pavone that Vietnam vets were "all stressed up," "all fucking crazy," and "crybabies." Supervisor Elium called Mr. Pavone a troublemaker in front of other employees. East and other supervisors frequently insulted Pavone, and plagued him with inconsistent commands.
 
 
 5
 In January 1990, Mr. Pavone began receiving daily radiation treatments for cancer. His treatments were administered in the building where he normally worked, but his supervisor decided to send him to a training class a half mile away. As a result, Mr. Pavone was forced to use his entire lunch hour each day walking to his treatments, and was unable to eat lunch. He complained to supervisor Moss that he was becoming ill taking his treatments without food, and Moss was apparently unsympathetic. After about thirty treatments, Mr. Pavone found that his shoulder, the site of the radiation treatments, became very tender, and would bleed when he was mopping floors. He reported this problem to East, who smiled and told him to continue working. Although Mr. Pavone produced a note from his physician requesting that he be placed on light duty, East never honored the request, and never mentioned it to his own superiors.
 
 
 6
 In July 1990, East accused Mr. Pavone of being AWOL. In the verbal tussle that ensued, East told Mr. Pavone that he was a fool for serving his country. This remark triggered a PTSD flashback for Mr. Pavone, causing him to sweat and breathe hard. East charged Mr. Pavone with threatening him as a result of this incident, a charge that was found to be unproven after investigation. During the investigation of this incident, supervisor Irby tendered reassignment papers to Mr. Pavone, which he refused to accept, believing them to be discharge papers. The next day, Mr. Pavone checked himself into the psychiatric ward at Hines. His psychiatrist met with supervisor Irby to explain the effect of stress on veterans with PTSD. After his release from the psychiatric ward, Mr. Pavone took a scheduled vacation, and when he returned to work discovered he had been assigned to housekeeping duties in the very same psychiatric ward from which he had just been released When his psychiatrist saw him there, he wrote a letter to Hines management asking to have Mr. Pavone reassigned Shortly thereafter, he was transferred to the geriatric extended care unit.
 
 
 7
 In the geriatric care unit, he was supervised by Corrine Loudermilk, who is African-American. Mr. Pavone initially got along well with Loudermilk, and when another employee made a race-related remark to Mr. Pavone about his representation of African-American employees in the union, Loudermilk forced the employee to apologize to Mr. Pavone. Loudermilk's supervisor, Martin Anderson, who was also African-American, made a similar remark to Mr. Pavone, telling him he was representing the "wrong people" in the union, which Mr. Pavone took to be a racially related comment Anderson also sometimes charged Mr. Pavone with being AWOL when he was attending union meetings, but Mr. Pavone never pursued these union-related problems with union remedies At some point during his work in the geriatric extended care unit, Mr. Pavone began having serious emotional problems handling the work The condition of the patients caused him enormous stress and triggered PTSD reactions in him. When he complained to Loudermilk, she told him to return to his duties. Although his reassignment to the geriatric extended care unit was supposed to be temporary, and the investigation involving East had long been completed, Mr. Pavone was never given an opportunity to return to his original assignment. In May 1991, Mr Pavone resigned, unable to take the stress. Shortly after his resignation from Hines, Mr. Pavone was rated 100% disabled by the Veterans Administration.
 
 
 8
 Mr. Pavone charged Hines with discriminating against him based on race and disability. He made no separate claim for failure to accommodate under the ADA, but charged as part of his disability discrimination claim that Hines would not accommodate his PTSD or cancer. The district court found that nothing in the record indicated that the full nature and extent of Mr. Pavone's disability were made clear to Hines management, and that the court doubted whether Hines could accommodate Mr. Pavone given the severity of his PTSD. Moreover, the record contained evidence that on occasion, Hines granted certain requests for accommodation. In considering Mr. Pavone's claim of race discrimination, the district court noted that Mr. Pavone was a member of a protected class, that he was performing his duties in a satisfactory manner, and that he was treated adversely, especially by East. But the district court found that poor management was endemic at Hines, and that East was among the worst of a poor group of supervisors. The district court concluded that because African-American employees complained of the same conduct of which Mr. Pavone complained, Mr. Pavone could not prove that he was treated adversely because of race. In other words, because the management at Hines treated all of the employees deplorably, Mr. Pavone could not show that the supervisors who harassed him were motivated by race.
 
 
 9
 Similarly, the district court found that although Mr. Pavone was treated insensitively and unreasonably, he was unable to show that this mistreatment was on account of his PTSD or cancer. The court emphasized again that the supervisors at Hines treated everyone poorly, and that even Mr. Pavone seemed to attribute this mistreatment to factors other than race and handicap. For example, at times. Mr Pavone attributed his supervisor's actions to his status as a veteran, at other time to his union activities His speculation that his supervisors were mistreating him because of his cancer or because of his PTSD was merely that: speculation. The district court reluctantly concluded that it had no power to provide a remedy for Mr. Pavone's mistreatment at the hands of his employer, and entered judgment for Hines.
 
 
 10
 In a separate, oral ruling from the bench, the district court found that Mr. Pavone had also failed to prove that he was denied a promotion because of his race and disability. The court found that Mr. Pavone was wrongfully and erroneously excluded from consideration for a promotion when Hines failed to take into account his prior experience at Borg-Warner as well as his experience at Hines. Mr. Pavone testified that Lovie Gantt, one of three decision-makers for the promotion, told him that the position was reserved for blacks and that Vietnam veterans with thirty percent or greater disability (which is how Mr Pavone was rated at the time) would be fired Gantt testified that she never made any such statement, and another Hines witness testified that Mr. Pavone's exclusion from consideration was simply a mistake. The district court found that Mr. Pavone was "largely a very credible witness," but that the court had no apparent reason to doubt the contradictory testimony of Gantt The court found the evidence in equipoise and accordingly found that Mr Pavone did not prove that the statement was made. Accepting Hines' explanation that Mr. Pavone's wrongful exclusion from consideration for promotion was a mistake, the court entered judgment in favor of Hines on the failure to promote claim as well.
 
 II.
 
 11
 On appeal, Mr. Pavone asks us to find that he was denied a promotion because of his race and that he was harassed and constructively discharged because of his disabilities. Following a bench trial, we may not reverse the fact findings of the district court absent clear error. Carr v. Allison Gas Turbine Division, General Motors Corp., 32 F.3d 1007, 1008 (7th Cir.1994). The clear error standard requires appellate judges to "distinguish between the situation in which we think that if we had been the trier of fact we would have decided the case differently and the situation in which we are firmly convinced that we would have done so." Id. (emphasis in original). Because we defer to the trial court's findings on credibility, the weight of the evidence and the inferences drawn therefrom, we traditionally give the trial court's findings great weight on review. Merriweather v. Family Dollar Stores of Indiana, Inc., 103 F.3d 576, 580 (7th Cir.1996)
 
 
 12
 Mr. Pavone contends he had direct evidence of race-based discrimination that the district court ignored. That evidence was his testimony that Lovie Gantt, one of the decision-makers, told him, "You know, this section is for blacks and these types of positions are for black employees only." Ms. Gantt testified at trial that she never made any such statement. The district court considered the diametrically opposed testimony of these two witnesses and found that although Mr. Pavone was "largely a very credible witness," the court had "no basis on which to discredit the testimony of Lovie Gantt" See Transcript of Proceedings before the Honorable Joan B. Gottschall, May 28, 1997, at 768-69 The trial judge found she was in equipoise on the issue of whether these remarks were made Because Mr. Pavone had the burden of persuasion on the question of whether race was a motive, the determination that the evidence was in equipoise was fatal to his case. See Bristow v. Drake Street, Inc., 41 F.3d 345, 354 (7th Cir.1994) (where plaintiff has burden of persuasion on the issue of whether sex was a motive for discrimination, finding that evidence was in equipoise doomed her case); Oddi v. Ayco Corp., 947 F.2d 257, 261 (7th Cir.1991) (when the evidence is in equipoise, defeat falls on the party who shoulders the burden on a particular question) Mr. Pavone offers us no reason to believe that the district court clearly erred in finding the evidence on this point equally balanced. As we have noted, we give great deference to the district court's credibility determinations. Given the trial judge's determination that neither party was more or less credible than the other, the judge correctly applied the burden of persuasion and found that Mr Pavone had not carried that burden. We must affirm the district court's finding that race was not a motivating factor in the decision to deny Mr. Pavone a promotion
 
 
 13
 Similarly, we must affirm the district court's finding that Mr. Pavone's mistreatment at the hands of his supervisors was not due to his disabilities The district court found that nothing in the record justified an inference that Hines' supervisors harassed Mr. Pavonebecause of his disabilities The court agreed with Mr Pavone that he is disabled, that he was subject to unwelcome harassment and that the harassment was severe enough to alter the conditions of his employment. Pavone, 1997 WL 441312 at * 8. But a number of other, non-disabled employees complained of the same mistreatment. The court concluded that although Mr. Pavone was, because of his PTSD, unusually sensitive to the bullying management style of his supervisors, he was not singled out for abuse. In fact, another employee suffering from PTSD testified that supervisor East treated everyone badly.
 
 
 14
 To succeed on a claim for disability discrimination, Mr. Pavone was required to prove, inter alia, that he was treated differently because of his disability. Sweeney v. West, 149 F.3d 550, 554 (7th Cir.1998). Generally, an employee's own perceptions of the harasser's motivations provide an ineffectual means of proving discrimination. Rothman v. Emory University, 123 F.3d 446, 453 (7th Cir.1997). The district court viewed the evidence as supporting the conclusion that Hines supervisors treated all of their employees badly. Thus, Mr. Pavone's evidence lacked a showing of causation. In other words, Mr. Pavone had no evidence suggesting that his supervisors would not have taken these same adverse actions against him had he not been disabled and everything else had remained the same. Leffel v. Valley Financial Services, 113 F.3d 787, 794 (7th Cir.1997), cert. denied, 118 S.Ct. 416 (1997). Without such evidence, the district court did not clearly err in finding that Mr. Pavone failed to prove his claim of disability discrimination. We must affirm the district court's judgment on that claim as well.
 
 
 15
 Finally, although Mr. Pavone did not make out a clear claim for failure to accommodate his disabilities, the district court nonetheless addressed whether Mr. Pavone had proved such a claim, and concluded he did not The district court found that Hines demonstrated an insensitivity and a failure to arrange the easiest accommodation for Mr. Pavone in relation to his cancer treatments, but that this failure did not constitute a failure to accommodate. The court noted that Mr. Pavone was able to receive his cancer treatments on a daily basis, and never presented a doctor's letter indicating a need for a longer break. With respect to his PTSD, the district court found that other than the two occasions when Mr Pavone specifically requested a transfer as an accommodation (both of which were granted), he failed to make any specific requests that were left unfulfilled by Hines. Again, we are bound by the district court's findings of fact and credibility determinations, and we see no reason to conclude that the district court clearly erred in finding that Mr. Pavone failed to prove his accommodation claim, to the extent he had made one
 
 
 16
 Like the district court, we are appalled by the shameful treatment of Mr. Pavone by the very institution charged with protecting his interests as a veteran. That Mr. Pavone was being treated for cancer and PTSD at Hines makes his mistreatment at the hands of Hines' supervisors all the more disturbing. But since it appears that the Hines supervisors were equal opportunity harassers, the district court could provide no remedy, and we, in turn, must affirm
 
 AFFIRMED